JAMES GALWAY, Respondent, *v.* THE METROPOLITAN ELEVATED RAILWAY COMPANY et al., Appellants.

Trespasses upon real property effected by an unlawful structure or nuisance are continuous in their nature and give separate successive causes of action from time to time as the injuries are perpetrated, barred only by the running of the statute against the successive trespasses.

No lapse of time or inaction merely on the part of an owner after the erection and during the maintenance of the unlawful structure, unless it has continued for such a period of time as will effect a change of title in the property or authorize the presumption of a grant, is sufficient to defeat the right of the owner to his action at law or equity.

So also, the right of an abutting owner to maintain an action at law or equity because of an invasion of his rights in a public street by the erection thereon of a structure which impairs his easement therein, continues so long as he continues to be the owner of the property, without regard to the lapse of time, provided the remedy is claimed within the statutory period of limitation applicable to the legal right and before adverse possession has barred his title.

It is immaterial, either in equity or law, whether the injuries done were originally intended by the wrong-doer to be perpetual and permanent, or were of a temporary nature only and occasional in their operation.

While, therefore, the lapse of six years after the erection of such a structure bars not only the legal, but is a practical defense to an equitable action, based upon the original trespass, if the structure is continued new causes of action arise, unbarred by any rule of law or equity and cognizable not only at law but in equity until the statute has run as against each.

Accordingly *held*, that the right to bring an action to restrain an elevated railroad company which had constructed its road in a street in front of plaintiff's premises and thereby unlawfully interfered with plaintiff's easements in the street, was not barred by the lapse of ten years from the time the road was constructed. (Code Civ. Pro. § 388.)

The doctrine of acquiescence as a defense to an equity action is limited to actions of an equitable nature exclusively, or to those where the legal right has expired, or the party has lost his right of property by prescription or adverse possession.

Where a legal right is involved, and upon grounds of equity jurisdiction the courts have been called upon to sustain the legal right, the mere *laches* of a party, unaccompanied by circumstances amounting to an estoppel, constitute no defense.

The rule requiring promptness in soliciting the intervention of a court of equity, is always addressed to the discretion of the court and varies according to the situation of the parties, the nature of the relief demanded and the circumstances of the case.

A court having authority to grant a perpetual injunction to restrain such continuous trespasses, does not impair the exercise of its authority by permitting, and it may permit, the wrong-doer to escape its effect by voluntarily paying the owner a specified sum for the property injured.

In such an action brought in 1889 it appeared that plaintiff obtained title to his premises prior to the year 1878, during which year defendant, without acquiring the easements or consents of the abutting owners, commenced and completed its road. The court found that plaintiff saw the road from time to time while in process of construction and occasionally took passage upon it; that he had subscribed to a fund to pay counsel to prevent its erection, but prior to the commencement of this action made no protest and instituted no legal proceeding to prevent its construction or operation. It was also found that after this action was commenced defendant instituted proceedings to condemn said easements, which were pending at the time of the trial. The court granted an injunction unless defendant pay to plaintiff a certain sum, as the depreciation of the value of the premises, upon his executing to it a conveyance of said easements. *Held*, no error.

(Argued May 4, 1891; decided October 6, 1891.)

APPEAL from judgment of the General Term of the Supreme Court in the first judicial department, entered upon an order made December 29, 1890, which affirmed a judgment in favor of plaintiff, entered upon a decision of the court on trial at Special Term.

The nature of the action and the facts, so far as material, are stated in the opinion.

*John F. Dillon* and *Julien T. Davies* for appellants. The plaintiff's right to maintain an action in equity to enjoin the maintenance and operation of the defendants' railway, and to recover damages to the inheritance by reason of the permanence of the structure, is barred by the ten years' limitation contained in section 388 of the Code of Civil Procedure. (*Atwater* v. *Fowler*, 1 Edw. 417; *Ray* v. *Bogart*, 2 Johns. Cas. 432; *Arden* v. *Arden*, 1 Johns. Ch. 313; *Ellison* v. *Moffatt*, 7 id. 46; *Rayner* v. *Pearsall*, 3 id. 578; *Phillips* v. *Provost*, 4 id. 205; *Mooers* v. *White*, 6 id. 360; *Kingslands* v. *Roberts*, 2 Paige, 193; *Spoor* v. *Wells*, 3 Barb. Ch. 199; *Plet* v. *Bouchaud*, 4 Edw. 30; *Calhoun* v. *Millard*, 121 N. Y. 69; *Butler* v. *Johnson*, 111 id. 204; *Hubbell* v. *Sibley*, 50 id. 468; *Peters* v. *Delaplaine*, 49 id. 362, 371; *Oakes* v. *Howell*, 27 How. Pr. 145; *Roberts* v. *Sykes*, 30 Barb. 173; *Wood* v. *Wood*, 26 id. 356, 361; *Salisbury* v. *Morss*, 7 Lans. 359; *Uline* v. *N. Y. C. R. R. Co.*, 101 N. Y. 98; *Lahr* v. *M. E. R. Co.*, 104 id. 295; *Pond* v. *M. E. R. Co.*, 112 id. 186; *Morris* v. *Budlong*, 78 id. 543; *Mann* v. *Fairchild*, 14 Barb. 548; *Still* v. *Holbrook*, 23 Hun, 517; *Rodman* v. *Devlin*, Id. 590; *Hoyt* v. *Tuthill*, 33 id. 196.) Courts of equity have exclusive jurisdiction of suits for injunction. (*Tallman* v. *M. E. R. Co.*, 121 N. Y. 119; *Knox* v. *M. E. R. Co.*, 36 N. Y. S. R. 2; 1 Pom. Eq. Juris. § 136; *People* v. *Clark*, 70 N. Y. 518; *L. C. N. Bank* v. *Guynn*, 6 Bush. 486; *Menard* v. *Hood*, 68 Ill. 121; *Wangelin* v. *Goe*, 50 id. 459; *Attorney-General* v. *N. J. R. & T. Co.*, 3 N. J. Eq. 136; *Owen* v. *Ford*, 49 Mo. 436; *C. & O. R. Co.* v. *Patten*, 5 W. Va. 234; *Cole* v. *Duke*, 79 Ind. 107; *G. P. R. Co.* v. *Mayor, etc.*, 75

Ga. 828; *Thomas* v. *M. M. P. Union,* 121 N. Y. 45, 52; *Health Dept.* v. *Purdon,* 99 id. 237; *McHenry* v. *Jewett,* 90 id. 58; *Campbell* v. *Seaman,* 63 id. 568, 580, 582, 583; *T. & B. R. Co.* v. *B., H. T. & W. R. Co.,* 86 id. 106, 123; *Jerome* v. *Ross,* 7 Johns. Ch. 315; *Livingston* v. *Livingston,* 6 id. 497; *Akrill* v. *Seldon,* 1 Barb. 316; *Cockey* v. *Carroll,* 4 Md. Ch. 344; *Frink* v. *Stewart,* 94 N. C. 484; *Hart* v. *Marshall,* 4 Minn. 294; *Cox* v. *Douglass,* 20 W. Va. 175; *E. L. & B. Assn.* v. *Atlanta,* 77 Ga. 496; *Ellis* v. *Wren,* 84 Ky. 254; *Haskell* v. *Thurston,* 80 Me. 129; High. on Inj. §§ 9, 22; *Morgan* v. *City of Binghamton,* 102 N. Y. 500; *Attorney-General* v. *Nicholl,* 16 Ves., Jr., 342; *Attorney-General* v. *Gee,* 10 Eq. 136; *Vernam* v. *Palmer,* 5 N. Y. Supp. 71; *People* v. *Canal Board,* 55 N. Y. 397; *T. & B. R. Co.* v. *B., H. T. & W. R. Co.,* 107 id. 107, 123; *Hart* v. *Mayor, etc.,* 9 Wend. 571; 3 Paige, 213; *Fox* v. *Fitzsimmons,* 29 Hun, 576; *Johnson* v. *City of Rochester,* 13 id. 285; *W. U. T. Co.* v. *Judkins,* 75 Ala. 428; *M. S. Mills* v. *Hickey,* 59 N. H. 241; *Weigel* v. *Walsh,* 45 Mo. 560; *Germania* v. *Clark,* 71 N. C. 417; *Shipley* v. *Ritter,* 7 Md. 408; *Ross* v. *Page,* 6 Ohio, 166; *Bethune* v. *Wilkins,* 8 Ga. 118; *Smith* v. *Gardner,* 12 Ore. 221; *Thorn* v. *Sweeney,* 12 Nev. 251; *McKeon* v. *See,* 51 N. Y. 300, 307; *Corning* v. *T. I. & N. Factory,* 40 id. 191, 206; *M. B. Co.* v. *U. & S. R. Co.,* 6 Paige, 554, 563; *Dunsbach* v. *Hollister,* 49 Hun, 352; *Olmsted* v. *Rich,* 6 N. Y. Supp. 826; *Parker* v. *W. L. C. & W. Co.,* 2 Black [U. S.], 545, 551; *Coe* v. *W. M. Co.,* 37 N. H. 254, 261; *Bunnell's Appeal,* 64 Penn. St. 59, 62; *Carlisle* v. *Cooper,* 21 N. J. Eq. 576, 579; *Hawley* v. *Beardsley,* 47 Conn. 571; *Fort* v. *Groves,* 29 Md. 188; *Cherry* v. *Stein,* 11 id. 1; *McCord* v. *Iker,* 12 Ohio, 387; *Norris* v. *Hill,* 1 Mich. 202, 210; *Dent* v. *A. M. Assn.,* 35 L. J. Ch. 555; *Swaine* v. *Great N. R. Co.,* 33 id. 399; *Attorney-General* v. *S. G. Co.,* 3 DeG., M. & G. 304; *Wood* v. *Sutcliffe,* 2 Sim. [N. S.] 163, 165, 166.) The statute commenced to run, at the latest, upon the completion of the defendants' railway. (Code Civ. Pro. § 415; *Story* v. *N. Y. E. R. Co.,* 90 N. Y. 160, 170, 178; *Fobes* v. *R., W. & O. R.*

*Co.*, 121 id. 505; *Kane* v. *N. Y. E. R. Co.*, 34 N. Y. S. R. 885; *Lahr* v. *M. E. R. Co.*, 104 N. Y. 295; *Tallman* v. *M. E. R. Co.*, 121 id. 119; *N. Y. E. R. Co.* v. *F. N. Bank*, 135 U. S. 432, 440; *Colrick* v. *Swinburne*, 105 N. Y. 503; *S. M. Co.* v. *State*, Id. 562; *Uline* v. *N. Y. C. & H. R. R. R. Co.*, 101 id. 98; *Arnold* v. *H. R. R. Co.*, 55 id. 661; *Waggoner* v. *Jermaine*, 3 Den. 306; *Newman* v. *M. E. R. Co.*, 118 N. Y. 618; *G. L. M. Co.* v. *Clague*, L. R. [4 App. Cas.] 115; *C. & E. I. R. Co.* v. *McAulay*, 121 Ill. 160; *C. & E. I. R. Co.* v. *Loeb*, 118 id. 203; *K. & S. R. Co.* v. *Horan*, 131 id. 288; *James* v. *City of Kansas*, 83 Mo. 567; *Pratt* v. *D. M. N. W. R. Co.*, 72 Ia. 249; *Powers* v. *City of Council Bluffs*, 45 id. 652; *K. P. R. Co.* v. *Mihlman*, 17 Kan. 224; *Frankle* v. *Jackson*, 30 Fed. Rep. 398; *Lyies* v. *T. & N. O. R. Co.*, 73 Tex. 95; *H. & T. C. R. Co.* v. *Chaffin*, 60 id. 554; *Acker* v. *Acker*, 81 N. Y. 143, 148; *Johnson* v. *A. & S. R. Co.*, 54 id. 416, 424; *Waltermire* v. *Westover*, 14 id. 16, 20; *Rawls* v. *A. L. Ins. Co.*, 36 Barb. 357, 361.) The plaintiff is precluded by his *laches* and acquiescence from seeking relief in a court of equity. (*Smith* v. *Clay*, 2 Ambl. 645; *Calhoun* v. *Millard*, 121 N. Y. 69; *Lyon* v. *Park*, 111 id. 350; *W. U. T. Co.* v. *Judkins*, 75 Ala. 428; *Bigelow* v. *City of Los Angeles*, 85 Cal. 614; *P. & A. R. Co.* v. *Jackson*, 21 Fla. 146; *Griffin* v. *A. & K. R. Co.*, 70 Ga. 164; *M. R. Co.* v. *Smith*, 113 Ind. 233, 236; *City of Logansport* v. *Uhl*, 99 id. 531; *B. & O. R. Co.* v. *Strauss*, 37 Md. 237; *Spencer* v. *F. T. Co.*, 70 id. 136; *D. M. O. & Co.* v. *M. P. R. Co.*, 37 Fed. Rep. 830; *Bassett* v. *S. M. Co.*, 47 N. H. 426; *M. & E. R. Co.* v. *Prudden*, 20 N. J. Eq. 530; *Erie R. Co.* v. *D., L. & W. R. Co.*, 21 id. 283; *Pickert* v. *R. P. R. Co.*, 25 id. 316; *Traphagen* v. *Mayor, etc.*, 29 id. 206; *Meredith* v. *Sayre*, 32 id. 557; *Goodin* v. *C. & W. C. Co.*, 18 Ohio St. 169, 179; *P. Co.* v. *Platt*, 25 N. E. Rep. 1028; *Pettibone* v. *L. C. & M. R. Co.*, 14 Wis. 443; *Wood* v. *C. C. R. Co.*, 33 Beav. 290; *Greenhalgh* v. *M. & L. R. Co.*, 3 M. & C. 784; *Peck* v. *Goodberlett*, 109 N. Y. 189; *M. A. Church* v. *O. S. Church*, 73 id. 95; *Wisner* v. *Ocumpaugh*, 71 id. 113;

*I., B. & M. R. Co.* v. *Allen,* 113 Ind. 581; *Bravard* v. *C., H. & I. R. Co.,* 115 id. 1; *Sherlock* v. *L., N. A. & C. R. Co.,* Id. 222; *L., N. A. & C R. Co.* v. *Soltweddle,* 106 id. 257; *L., N. A. & C. R. Co.* v. *Beck,* 119 id. 124; *St. Julien* v. *M. L. & T. R. Co.,* 35 La. Ann. 924; *Lawrence* v. *M. L. & T. R. Co.,* 39 id. 427; *Provolt* v. *C., R. I. & P. R. Co.,* 57 Mo. 256; *Baker* v. *C., R. I. & P. R. Co.,* Id. 265; *Kanaga* v. *S. L., L. & W. R. Co.,* 76 Mo. 207; *Gray* v. *S. L. & F. R. Co.,* 81 id. 126; *Pryzbylowicz* v. *M. R. R. Co.,* 17 Fed. Rep. 492; *O. & N. W. R. Co.* v. *Redick,* 16 Neb. 313; *Verdier* v. *P. R. R. Co.,* 15 S. C. 476; *Tompkins* v. *A. & K. R. Co.,* 21 id. 421.) The court having found that the rental value of plaintiff's lots has not been damaged by the railway, the injunction could only have been granted as a means of compelling payment of permanent damages sustained when the road was built in June, 1878. (*McHenry* v. *Jewett,* 90 N. Y. 58; *Health Dept.* v. *Purdon,* 99 id. 237; *Moors* v. *Railroad Co.,* 108 id. 98; *Cooke* v. *Flatbush Water Works,* 27 Hun, 72; *Wergil* v. *Walsh,* 45 Mo. 560; *Indianapolis, etc., Co.* v. *Indianapolis,* 29 Ind. 452; *Cross* v. *Morristown,* 3 id. 305; *Laney* v. *Jasper,* 39 Ill. 46; *Blanchard* v. *Doering,* 23 Wis. 200; *Owen* v. *Field,* 12 Allen, 457; *Pott* v. *Smith,* L. R. [6 Eq.] 311; *People* v. *Canal Board,* 55 N. Y. 397.) The finding of the trial court that the value of plaintiff's easements is $20,000 is contrary to law and wholly unsupported by evidence. (Code Civ. Pro. § 993; *Bedlow* v. *F. D. D. Co.,* 112 N. Y. 263, 269; *Todd* v. *Nelson,* 109 id. 316, 322; *Ryan* v. *M. R. Co.,* 121 id. 126, 133; *Dwight* v. *G. L. I. Co.,* 103 id. 341, 359; *Taylor* v. *City of Yonkers,* 108 id. 571, 577; *Kaveny* v. *City of Troy,* 105 id. 202, 208; *Wilds* v. *H. R. R. R. Co.,* 24 id. 430; *Deyo* v. *N. Y. C. R. R. Co.,* 34 id. 9; *Baulec* v. *N. Y. & H. R. Co.,* 59 N. Y. 356, 366; *Hyatt* v. *Johnson,* 91 Penn. St. 200; *I. Co.* v. *Munson,* 14 Wall. 442; *Newman* v. *M. E. R. Co.,* 118 N. Y. 618, 625; *Kenkele* v. *M. E. R. Co.,* 55 Hun, 398; *In re Public Parks,* 53 id. 304; *In re B. E. R. Co.,* 28 N. Y. S. R. 627; *Uline* v. *N. Y. C., etc., R. Co.,* 101 N. Y. 98, 118; *Story* v. *N. Y. E. R.*

*Co.*, 90 id. 122, 148, 171, 179 ; *Tallman* v. *M. E. R. Co.*, 121
id. 119, 125 ; *Abendroth* v. *M. R. Co.*, 122 id. 1, 17; *N. Y.
E. R. Co.* v. *F. N. Bank*, 135 U. S. 432, 440 ; *Taylor* v. *M.
E. R. Co.*, 18 J. & S. 322, 328 ; *S. A. R. Co.* v. *M. E. R.
Co.*, 56 Hun, 182, 185 ; *Henderson* v. *N. Y. C. R. R. Co.*, 78
N. Y. 423, 430, 438 ; *Smith* v. *City of Rochester*, 92 id. 477,
478 ; *Glover* v. *M. R. Co.*, 19 J. & S. 1 ; *Methodist Society*
v. *B. E. R. Co.*, 46 Hun, 530 ; *Vick* v. *City of Rochester*, Id.
607 ; Pom. Eq. Juris. § 109 ; *Worrall* v. *Mann*, 38 N. Y.
137, 142 ; *M. A. B. Church* v. *O. S. B. Church*, 73 id. 82,
95 ; *Murtha* v. *Curley*, 90 id. 372, 378 ; *Pond* v. *M. E. R.
Co.*, 112 id. 182, 189, 190 ; *Helck* v. *Reinheimer*, 105 id. 470 ;
*Jackson* v. *Van Slyke*, 52 id. 645 ; *H. Ins. Co.* v. *W. T. Co.*,
51 id. 93 ; *Wangler* v. *Swift*, 90 id. 38, 45.) To entitle the
plaintiff to the aid of a court of equity it is essential, not only
that he should have an existing right of property, but also that
he should have an equity entitling him to the relief sought.
The equity may fall within the bar of the statute, although
the right of property may be unimpaired in the eye of the law.
(*Power's Appeal*, 125 Penn. St. 175 ; *Wood* v. *Sutcliffe*, 2
Sim. [N. S.] 163 ; *Acker* v. *Acker*, 81 N. Y. 143, 148 ; *Johnson* v. *A. & S. R. Co.*, 54 id. 416, 424 ; *Waltermire* v. *Westover*, 14 id. 16, 20 ; *Wright* v. *S. B. & N. Y. R. Co.*, 49 Hun,
445.) If the *laches* and acquiescence of these plaintiffs and their
predecessors in title were not sufficient to deprive them of all
equitable relief, they were, in any event, sufficient to deprive
them of any right to an injunction, and to limit the relief
which should have been granted to a judgment for the damages to the inheritance. (1 Pom. Eq. Juris. 246, § 237 ; *Hatch*
v. *Cobb*, 4 Johns. Ch. 559 ; *Kempshall* v. *Stone*, 5 id. 194 ;
*Morss* v. *Elmendorf*, 11 Paige, 277 ; *Smith* v. *Kelley*, 56
Me. 64 ; *McQueen* v. *Chouteau*, 20 Mo. 222 ; *Doan* v. *Manzey*,
33 Ill. 227 ; *Gupton* v. *Gupton*, 47 Mo. 37 ; *Milkman* v.
*Ordway*, 106 Mass. 232, 253 ; *Sternberger* v. *McGovern*, 56
N. Y. 12, 20 ; *Chartier* v. *Marshall*, 56 N. H. 478 ; *Atty.-
Gen.* v. *D. R. B. Co.*, 105 Mass. 1 ; *Peabody* v. *Tarbell*, 2
Cush. 226 ; *Andrews* v. *Brown*, 3 id. 130 ; *Pingree* v. *Coffin*,

12 Gray, 288, 305 ; *Woodcock* v. *Bennett*, 1 Cow. 711 ; *Phillips* v. *Thompson*, 1 Johns. Ch. 131 ; *Parkhurst* v. *Van Cortland*, Id. 273 ; *Woodward* v. *Harris*, 2 Barb. 439 ; *Berry* v. *Van Winkle*, 1 Green Ch. 267 ; *Copper* v. *Wells*, Saxton, 10 ; *Rees* v. *Smith*, 1 Ohio, 124 ; *Gibbs* v. *Champion*, 3 id. 335 ; *Jones* v. *Shackelford*, 2 Bibb. 410 ; *Fisher* v. *Kay*, Id. 434 ; *Rankin* v. *Maxwell*, 2 A. K. Marsh. 488 ; *Hopkins* v. *Gilman*, 22 Wis. 476 ; *Tenney* v. *State Bank*, 20 id. 152 ; *Hall* v. *Delaplaine*, 5 id. 206 ; *O'Meara* v. *N. A. M. Co.*, 2 Nev. 112 ; *Carroll* v. *Wilson*, 22 Ark. 32 ; *Harrison* v. *Deramus*, 33 Ala. 463 ; *Foley* v. *Crow*, 37 Md. 51 ; *Stevenson* v. *Buxton*, 37 Barb. 13 ; *Hamilton* v. *Hamilton*, 59 Mo. 232 ; *Denton* v. *Stewart*, 1 Cox, 258 ; *C. Co.* v. *Corbett*, 2 D. & S. 355 ; *Sayers* v. *Collyer*, L. R. [28 Ch. Div.] 103 ; *Pennington* v. *B. H. C. Co.*, 46 L. J. Ch. 773 ; *Senior* v. *Pawson*, L. R. [3 Eq.] 330.)

*John E. Burrill* and *George Zabriskie* for respondent. Nominal damages, which the defendants conceded by their requests to find, entitled plaintiff to an injunction on the principle that actual damages are not necessary to be shown when the wrongful act might furnish the foundation of a claim or right adverse to the owner of the dominant premises. (Goddard on Easements, 355, 357, 363, 445 ; *Henderson* v. *N. Y. C. R. R. Co.*, 78 N. Y. 423 ; *Shepard* v. *M. R. Co.*, 117 id. 443, 449 ; *Hussner* v. *B. R. Co.*, 114 id. 433 ; *Abendroth Case*, 122 id. 1 ; *Tallman Case*, 121 id. 123 ; *Meyer* v. *Phillips*, 97 id. 485 ; *Garwood* v. *N. Y. Co.*, 83 id. 404 ; *Smith* v. *City of Rochester*, 38 Hun, 612 ; 104 N. Y. 674 ; *Corning Case*, 39 Barb. 312, 326 ; 40 N. Y. 191 ; *Webb* v. *Portland Co.*, 3 Sum. 187.)  The award of $20,000 as the value of the easements of light, air and access appurtenant to plaintiff's premises, which were taken and appropriated by the defendants in the construction and operation of their railroad, was reasonable and fully sustained by evidence. (*Henderson Case*, 78 N. Y. 423, 429, 430 ; 17 Hun, 344, 352 ; *N. Y. E. Bank Case*, 21 J. & S. 513 ; 108 N. Y. 660 ; *Carter's Case*, 25 J. & S. 279,

281; *Eno's Case,* 24 id. 313, 318; *Lawrence Case,* 35 N. Y. S. R. 39 ; *People* v. *French,* 123 N. Y. 637 ; Code Civ. Pro. § 1337; *Leonard* v. *Tillotson,* 97 N. Y. 1 ; *In re Ross,* 87 id. 514; *Vermilyea* v. *Palmer,* 52 id. 471, 473 ; *Flack* v. *Green Island,* 122 id. 117 ; *Quincy* v. *White,* 63 id. 375.) The Statute of Limitations is no defense. (*Haight* v. *Price,* 21 N. Y. 241 ; *Campbell* v. *Seaman,* 63 id. 568 ; *Broiestedt* v. *South Co.,* 55 id. 220 ; *Tallman Case,* 121 id. 123.) Acquiescence is no defense. (*S. A. R. R. Co.* v. *G. E. R. R. Co.,* 3 Abb. [N. C.] 372 ; *Ode* v. *M. R. Co.,* 56 Hun, 199 ; *McMurray* v. *McMurray,* 66 N. Y. 176 ; *Tallman Case,* 121 id. 123 ; *Chapman* v. *City of Rochester,* 110 id. 273 ; *Haight* v. *Price,* 21 id. 241 ; *Ormsby* v. *Co.,* 56 id. 623 ; *Powers* v. *M. Co.,* 120 id. 178 ; *Menendez* v. *Holt,* 128 U. S. R. 523 ; *Knox* v. *M. Co.,* 58 Hun, 517 ; *Jewett* v. *Miller,* 10 N. Y. 402 ; *Campbell* v. *Seaman,* 63 id. 568 ; *N. Y. R. Co.* v. *Rothery,* 107 id. 313 ; *Calkins* v. *Bloomfield Co.,* 1 T. & C. 541 ; *Christianson* v. *Linford,* 3 Robt. 215 ; *Snow* v. *Williams,* 16 Hun, 468 ; *Broustedt* v. *S. Co.,* 55 N. Y. 220.) The exceptions taken by the defendants to the questions put to Christian are not well taken. (*Crawford* v. *M. E. R. Co.,* 120 N. Y. 625 ; *Ward* v. *Kilpatrick,* 85 id. 413, 417.) An exception to evidence on the sole ground of "immateriality" will not be sustained by reversing a judgment unless it appear affirmatively that the defeated party was prejudiced by such testimony and that it influenced the decision of the court or the verdict of the jury. (*McGean* v. *M. R. Co.,* 117 N. Y. 225.) The question was not immaterial. The witness was describing the structure and station which extended from Fifty-seventh to Fifty-ninth street, and which extended in front of plaintiff's premises. It was competent and proper to describe it as a whole and its use, in order that the court might determine the extent of the injury to plaintiff's premises. (*Rose* v. *Grover,* 5 M. & G. 613 ; *Lyon* v. *Fishmonger Co.,* 10 Ch. App. 679 ; *Van Brunt* v. *Ahearn,* 13 Hun, 388; *Crooke* v. *Anderson,* 23 id. 266 ; *Callanan* v. *Gilman,* 107 N. Y. 360.) The two questions put to O'Reilly were proper. (*McGean* v. *Railway Co.,* 117

N. Y. 225; *Ross* v. *M. R. Co.*, 35 J. & S. 412; *Kuh* v. *M. E. R. Co.*, 9 N. Y. Supp. 710.)

RUGER, Ch. J.    This is one of the usual actions in equity to restrain the defendants from further maintaining and operating an elevated street railroad on Sixth avenue in the city of New York adjacent to plaintiff's property, thereby unlawfully interfering with it.

This property consisted of five vacant lots, extending about one hundred and twenty-five feet along the easterly side of the avenue, between Fifty-seventh and Fifty-eighth streets, and was acquired by the plaintiff by purchase in and previous to 1871.    The defendant, the Metropolitan Elevated Railway Company, commenced and completed the structure of its railroad between the months of January and July, 1878, and from the time of its completion to the commencement of this action, in 1889, it has, either by itself or through its lessee, The Manhattan Railway Company, continued to maintain and operate an elevated steam railroad in front of and adjoining the plaintiff's premises in Sixth avenue.    No proceedings were taken by the railroad to acquire the easements of the abutting owners in the avenue, or their consent to its construction previous to the commencement of this action.

The plaintiff complained that by reason of the operation of such railroad, in impairing the easements of light, air and access to his premises, he had been damaged, and demanded judgment for such damages, as well as a perpetual injunction against the defendants from further operating and maintaining their railroad in front of his premises.    A trial was had at Special Term and the court declined to award pecuniary damages to the plaintiff, but rendered judgment granting the relief by injunction, unless the defendant should pay to the plaintiff, within a limited time, the sum of twenty thousand dollars as the depreciation of the value of the premises caused by the railroad, and upon such payment being made required the plaintiff to execute to the defendant a conveyance of the easements.    The depreciation in the value of plaintiff's

property by reason of the erection and maintenance of the railroad was found by the trial court to be twenty thousand dollars, and the evidence supported that finding. It was also found that the plaintiff saw the railroad in the course of construction in front of his premises, and, from time to time, saw what defendants were doing in respect thereto, and occasionally, as a passenger, rode upon it. He subscribed money to pay for counsel to prevent the erection of the road, but made no protest otherwise, and instituted no legal proceedings to enjoin its construction or operation prior to the commencement of this action. It was also found that after the commencement of this action, but before the trial, the defendants instituted proceedings for the condemnation of that part of the easements referred to which had been taken for the use of such railroad, and that such proceedings were pending undetermined at the time of the trial.

The defendants requested the trial court to find the following propositions of law: First. "That this action is barred by the Statute of Limitations;" and Second. "That plaintiff's alleged right of action is barred by his acquiescence in said railroad and its operation, and his use thereof as a passenger," and that he is estopped from maintaining the action. The court refused to find as requested, and it is conceded by the defendants that the exceptions to such refusal raise the only questions to be considered on this appeal.

It is claimed that the ten years Statute of Limitations commenced to run against an equity action from the time the plaintiff was first entitled to commence such action, and that period having elapsed, that the plaintiff was barred from maintaining such action by section 388 of the Code of Civil Procedure. This section is the general statute adopted in the Code as a precautionary measure, to cover cases inadvertently omitted or otherwise unprovided for.

The general right of an abutting owner on a public street to recover damages for an unlawful invasion of his easements by the erection and maintenance of an elevated railroad in the street adjoining his premises is not contested by the defend-

ants.    Nor is the liability of the defendants to make compen-
sation to the plaintiff for the injury inflicted upon his property
by the construction and operation of their railroad disputed,
or his right to maintain successive actions at law to recover
damages for the injury to his easement; but it is claimed that
he has lost the right to proceed in equity, not only by reason
of the Statute of Limitations, but also by virtue of an equitable
estoppel arising out of the alleged acquiescence in the admitted
trespasses.

The case, therefore, involves the question how far, if at all,
the owner has forfeited his rights in his property by reason of
his alleged *laches* and inaction during the period of eleven
years intervening between the construction of the road and
the commencement of the action.

We think it would be impossible to sustain this appeal
without unsettling the established law of the state.    It is, in
effect, an effort to exempt actions in equity from the operation
of the well-settled principle that trespassers upon real property
effected by an unlawful structure or nuisance, are continuous
in their nature and give successive causes of action from time
to time, as the injuries are perpetrated.    The questions raised
are answered by elementary principles established in this state
by numerous reported cases.    They are found in the two
propositions that continuous injuries to real estate caused by
the maintenance of a nuisance or other unlawful structure
create separate causes of action barred only by the running of
the statute against the successive trespasses, and the further
principle that no lapse of time or inaction merely on the part
of the plaintiff during the erection and maintenance of such
structure, unless it has continued for the length of time neces-
sary to effect a change of title in the property claimed to have
been injured, is sufficient to defeat the right of the owner to
damages.

It may be that there is no case where the precise question as
to the application of section 388 to such causes of action has
been directly decided in this state, but the rule follows as a
logical conclusion from the cases, and it affords a strong argu-

ment against the appellants' theory that, in the numerous cases in this state in which the question has been involved, the point has never before been taken by counsel for the trespasser in any case in this court.

It is not claimed here that the plaintiff has ceased to be the owner of the easements impaired, or that any other party has acquired title thereto, but it is argued that he has lost the right to employ the equitable power of the courts by reason of his neglect to demand it within ten years from the time when a cause of action accrued. Thus, although the wrongful acts may be continued and the owner subjected to irreparable injury, and his legal remedy may be either inadequate or require that it should be sought through repeated and numerous actions at law, it is contended that the jurisdiction of an equity court shall be arrested at the very time when, in the interest of the public, the exercise of its power becomes the most apparent and necessary. This claim, we think, is altogether untenable. The right of abutting owners to damages for an invasion of their rights in the public streets is predicated upon the constitutional guarantees that no person shall be deprived of life, liberty or property without due process of law, or have his property taken for public use without just compensation, and it necessarily follows that so long as such person continues to be the owner of property and liable to be injured in respect thereto by the unlawful acts of others, he is entitled to invoke the protection of the fundamental law, without regard to the lapse of time that may occur before the commencement of legal proceedings, provided the remedy is claimed within the statutory period of limitation applicable to his legal right, or before adverse possession has barred his title to the property injured. (*Uline* v. *N. Y. C. & H. R. R. R. Co.*, 101 N. Y. 98; *Arnold* v. *H. R. R. R. Co.*, 55 id. 661; *Colrick* v. *Swinburne*, 105 id. 503; *Tallman* v. *M. E. R. R. Co.*, 121 id. 123.)

The cause of action, both at law and equity, in such cases arises out of the trespasses committed, and is based on the ownership of the property upon which the injuries are inflicted,

and it is obvious that no cause of action can be barred while there is an outstanding legal cause of action for which the party has a legal remedy.  The existence of a legal cause of action is not only a prerequisite to the maintenance of the equitable action, but is also the foundation of the jurisdiction which equity courts possess in respect to the subject-matter.

The questions presented have been so frequently considered and decided in this court in analogous cases adversely to the contention of the appellants, that they should no longer be the subject of controversy or debate.  The learning and ability, however, with which the counsel for the appellants have pressed their case before us, have induced us to treat the questions argued at greater length than would otherwise have been thought necessary or proper, and we, therefore, indicate briefly the general theory upon which this court has proceeded in the determination of like questions.

That theory is concisely expressed by Judge EARL in the case of *Tallman (supra)*.  It was there said that "When the defendant began to construct its railway in front of the plaintiff's lots, he could have commenced an action in equity against it and restrained it until it had made compensation to him for the rights and easements which it took from him, or until it had acquired them by condemnation proceedings.  In that way he would, at least in the theory of the law, have been indemnified for all the damage he would suffer by reason of the construction of the railway.  Instead of taking his remedy by an equitable action at that time, he could have taken it at any time afterwards, during his ownership of the lots, with the same result.  He was not, however, confined to his remedy by such an action.  He could suffer the railway to be constructed and then bring successive actions to recover damages to his lots caused by the construction, maintenance and operation of the railway."

In the *Arnold* case it was held that an easement to carry water in a trunk over the land of another "was such an interest in land as could not be modified or discharged save by conveyance in writing or by operation of law; that it was prop-

erty within the meaning of article 1, section 6 of the Constitution, and, therefore, could not, nor could any portion of it be taken for public use without compensation," and "that this right of enjoying such easement was a continuous one, and the unlawful preventing its exercise a continuous injury, and that, therefore, the Statute of Limitations did not bar plaintiff's claim for the injuries sustained."

It is now the settled law of this state that no action at law can be maintained by an owner to recover prospective damages for injuries inflicted upon real property, and it is equally certain, we think, that an equity action for that purpose alone cannot be sustained. (*Uline* v. *N. Y. C. & H. R. R. R. Co.*, *supra*; *Pond* v. *Me. Elevated R. Co.*, 112 N. Y. 187.)

Inasmuch as the equitable remedy depends, among other things, upon the existence of a legal cause of action, it follows that those facts which will bar the legal action will also afford an answer to the equitable remedy, and that so long as a legal remedy exists an equity court is open to aid in the enforcement of the legal claim.

When the trespass is of such a character that it may be discontinued at the option of the wrong-doer, or, if continued, is susceptible of having legal sanction obtained for its continuance, it seems offensive to our sense of right that a wrong-doer should be permitted to allege that his intention to repeat and continue his own unlawful conduct should deprive the owner of any of the remedies which the law has provided for his protection. If it were otherwise the wrong-doer would be permitted to show the aggravated character of his own conduct as a defense to the action of the legal owner and thus violate the rule of law, as well as the plainest principles of equity.

Upon settled principles a court of equity had unquestioned jurisdiction by reason of the continuance of the legal right and the inadequacy of the legal remedy to render the judgment pronounced in this case by the trial court. (*Henderson* v. *N. Y. C. R. R. Co.*, 78 N. Y. 423; *Tallman Case, supra.*)

That successive causes of action have accrued to the owner for each day's maintenance and operation of the railroad

structure adjoining his·premises is undisputable, and that he is entitled to recover some damage for each trespass, even though it be nominal only, is equally undeniable. (*Colrick* v. *Swinburne, supra.*)

The plaintiff may delay his action and join together such causes of action as have not then outlawed, or he may bring an actain daily and recover such damages as he can establish. (*Baldwin* v. *Calkins.*)

In the case of unoccupied lands these damages may be small, but by delay the owner may lose them altogether, and in the meanwhile his toleration may be laying the foundation of an adverse claim to the property itself, and thus be the cause to him of irreparable injury. While it is indispensable to the protection of his rights that he should assert them before his right is barred, in such case it may not be to his interest to do so as often or as promptly as when his damages are large and immediate, but no bar from *laches* is available unless the legal action is barred.

The jurisdiction of equity arises by reason of the necessity of repeated actions at law to redress the owner's grievance and must, from the nature of the case, continue so long as that necessity exists.

The existence of either of the grounds of equity jurisdiction referred to, is sufficient to maintain an action, but they, in fact, are all present here and indicate the ·propriety of the judgment appealed from.

It was said by Judge EARL in *Campbell* v. *Seaman* (63 N. Y. 582) that "the right to an injunction, in a proper case, in England and in most of the states, is just as fixed and certain as the right to any other provisional remedy. The writ can rightfully be demanded to prevent irreparable injury, interminable litigation and a multiplicity of suits, and its refusal, in a proper case, would be error to be corrected by a proper tribunal."

The lapse, therefore, of six years after a trespass has been committed upon real estate, bars not only the legal but also constitutes a practical defense to an equitable action founded

upon the necessity of numerous legal actions to obtain redress, because the right to such redress has as to such wrongs expired. But, if the trespasses are continued after that period, new causes of action arise, unbarred by any rule of law or equity, which are cognizable not only at law but also in equity. (*Uline Case, supra.*)

Section 388 of the Code finds its true interpretation when applied to causes of action founded upon equitable rights alone, or cases not specified in the general Statutes of Limitation.

It being conceded as to legal causes of action for trespass and nuisance, that the injuries thereby occasioned are continuous and arise from time to time as fresh trespasses are committed, it is difficult to see why the same principle should not apply with at least equal force and propriety to equitable actions. Indeed, it is obvious that it should be held to apply with greater reason to the latter, since otherwise the equity jurisdiction would be practically subverted. While the appellants' contention would permit the equity jurisdiction to be preserved for ten years, it precludes its exercise forever thereafter and leaves the evils of incessant litigation to harass the public for practically an unlimited period of time.

It would seem, therefore, that it is immaterial, either in equity or at law, whether the injuries done to the owner's property were originally intended by the wrong-doer to be perpetual and of a permanent character, or were of a temporary nature only and occasional in their operation. The law makes no distinction in the character of the injury, but prescribes one uniform principle for redress, without regard to the nature of the remedy pursued. (*Krehl* v. *Burrell*, L. R. (11 Ch. Div.) 146; *Henderson's Case, supra; Baldwin* v. *Calkins*, 10 Wend. 170; *Williams* v. *N. Y. Central R. R. Co.*, 16 N. Y. 111.)

The defendants' chief contention is that the relief in equity as now given against elevated railroads for invasions of the rights of abutting owners in streets, is practically an action to recover permanent damages for such injuries, and that, therefore, the Statute of Limitations should commence to run from the time when any cause of action arose.

There would be some force in this argument were that the real character of the action, or if the equity courts had assumed to exercise the power of awarding damages on that theory, but we know of no instance in which they have done so in this state. The action here is neither in practice nor theory an action of such a character and by its fundamental rules, as well as the constitutional requirement that compensation for such property shall be assessed by a jury or commission alone, an equity court is incapacitated from entertaining actions instituted for the purpose of recovering damages alone. (*Bradley* v. *Bosley*, 1 Barb. Ch. 125 ; *Morss* v. *Elmendorf*, 11 Paige, 277 ; Art. 1, § 7, Constitution.)

A court of law is the exclusive tribunal for the determination of such actions. We have been referred to no case in this state where an equity court has assumed the authority to render judgment for prospective damages against a wrong-doer, and, we think, in the nature of the jurisdiction of such courts, a suit brought for such a purpose alone is not authorized. To say, therefore, that an action in which the plaintiff has no legal right to demand permanent damages, and the court owes no legal duty to award them, affords the owner an adequate remedy for such damages, is to pervert the plain character of the action. While equity courts have frequently suspended the remedy, as they did in this case, by injunction upon conditions, as for a specified time, or until the wrong-doer has been afforded an opportunity to condemn the property invaded, or has satisfied the owner's damages, they have never, to our knowledge, rendered judgment for such damages or authorized the collection thereof by the owner. The privilege of securing the right to continue the trespasses complained of has, when authorized, been granted as an act of grace and favor to the offending party, and not as matter of right to the injured owner. As was said in the *Henderson* case : " Equitable relief is awarded, not as the defendant's counsel claims, by way of menace or as a means of compelling the payment of money, but that the defendant may desist from an unauthorized use of the plaintiff's property and forbear from any further interference with their rights."

Equity courts can, by virtue of their power to grant specific relief, obviate the difficulty attending an action at law in giving permanent damages for an injury to real property, by providing that a title to the easements required shall be conveyed as a condition of the relief granted. The court, having the authority to grant a perpetual injunction, does not impair its exercise of such authority by permitting the offender to escape its effect by voluntarily paying the owner for the property injured. It is thus left optional with the trespasser to remedy the wrong done by him, or to suffer the judgment of the court to stand.

While the injury inflicted upon the wrong-doer by neglect to comply with the conditions may be so onerous, in many cases, as to inflict great loss upon him, it, nevertheless, does no more than place in his hands the means of escaping from the disastrous consequences of a judgment which has been rendered imperative by his own wrongful conduct. A party who voluntarily prosecutes a public enterprise for his own benefit, without regard to the legal rights of individuals who may be damaged by its operation, must always run a great risk of being placed in a dangerous situation through his unlawful conduct; but this is the result of his own volition and the injury which necessarily follows such action cannot lawfully be imposed upon the parties injured without disregarding the constitutional provisions intended for their protection.

It furnishes no cause of complaint to the wrong-doer, that the court having power to restrain him altogether from continuing his trespasses, should mitigate the severity of its judgment by authorizing him to repeat them upon complying with special conditions prescribed by the judgment, so long as it is left to his election to perform them or not.

A consideration of the cases generally in which equity courts have exercised the power of giving damages as an incident of the equitable relief granted, seems to be unnessary in this case, as such courts in this state have not in this class of actions, so far as we know, assumed to exercise that power.

The cases cited by the appellants to sustain the authority of

an equity court to award permanent damages to real property, were those of foreign jurisdictions where special statutes existed or those in which no constitutional provision requiring such damages to be assessed by a jury or commissioners were in force. Here such a requirement exists and the courts decline to assess such damages, but simply say to the corporations, you may escape the legal consequences of your conduct by complying with certain conditions; as, for instance, by paying the plaintiff a specified sum of money. This sum may represent the actual depreciation in the value of the plaintiff's property or the amount of damages already suffered, or any other arbitrary sum. The defendant, who has an option to pay it or not at his own will, cannot justly complain of the action of the court. The option is given to the defendants and not to the plaintiff. His remedy is confined to his injunction. The injury which results to the defendants, in case the option is not accepted, results from the judgment rendered by the court and not from their neglect to make payment. The expression, made use of in some of the cases, to the effect that " the only remedy whereby just compensation for the property taken can be compelled, is an action to restrain the continuous trespasses " (*Pond* v. *Met. El. R. Co.*, 112 N. Y. 186 ; *Tallman Case, supra*), means simply that an injured party can by that means secure the enjoyment of his property, unless the wrong-doers by making compensation in some form for the injury inflicted, acquire the lawful right to continue it. In this sense only they may be, not incorrectly, called actions to compel the payment of damages.

The defendants also urge, as a reason why the Statute of Limitations should bar this action, that otherwise they will be embarrassed in their efforts to secure a right by prescription. We ascribe but little weight to this suggestion. The law applies a period of limitation to actions for the public benefit. They are termed statutes of repose and are founded upon the maxim " *Interest res publicæ ut sit finis litium.*" They are not intended for the benefit of wrong-doers, and while the law tolerates and protects title acquired by prescription when

clearly made out, it does not favor or encourage that mode of acquiring property.

We are, therefore, of the opinion that the right to bring an equity action to restrain continuous trespasses upon real estate is not barred in ten years from the time of the original trespass, but may be sustained if brought at any time so long as the plaintiff has title to the property injured, and a cause of action for such injuries is not barred at law.

But the defendants, failing to establish the bar of the Statute of Limitations, still insist that the affiliated principle of acquiescence constitutes a defense to the action. There is no foundation in the case for a claim that the plaintiff's conduct amounted to an estoppel, and, indeed, the claim is not seriously urged by the appellants. It is obvious that such conduct has never led the defendants into a line of action which they would not otherwise have pursued, or encouraged them to expend money or make improvements by reason of their reliance upon the alleged inaction or acquiescence of the plaintiff. They inaugurated their enterprise in the face of persistent opposition by the plaintiff and other abutting owners, and carried it to completion while earnest efforts were being made to prevent them. From the inception of the enterprise to the present time, the claim that the defendants had a right to build their road in the streets of New York without compensating the abutting owners for the damages inflicted upon their property, has been uniformly denied and the defendants have continued the prosecution of their purpose regardless of their legal liability and in the face of strenuous opposition, with an apparent intention to wholly ignore the claims of such owners.

The judicial annals of the state are filled with the history of the litigations which have sprung out of the efforts of the elevated railroad companies to appropriate the property of the citizens of New York to the benefit of such railroads without compensation. In view of these facts, it is idle to claim that such companies have been induced in any respect to continue their enterprise in reliance upon the assumed acquiescence of the owners. (*Boardman* v. *L. S. & M. S. Ry. Co.*, 84 N. Y. 181.)

The building and completion of their road in this case occurred in the first half of 1878, and was completed before the numerous parties concerned could have been fully awake to the real consequences of the enterprise. So far as the permanent structure is concerned, their expenditures were all incurred within six months and while the parties were making earnest efforts to stay any expenditures.

The case is entirely destitute of proof showing the existence of any elements of estoppel, and the defendants are, therefore, driven to rely, in this respect, upon the mere inaction of the plaintiff to prosecute his claim. This claim comes with little grace from parties who have for a much longer period neglected to take proceedings to acquire the real ownership of the property required by them in the prosecution of their enterprise.

But this question we also think is governed by authority equally conclusive with, that relating to the Statute of Limitations. The doctrine of acquiescence as a defense to an equity action has been generally limited here to those of an equitable nature exclusively, or to cases where the legal right has expired, or the party has lost his right of property by prescription or adverse possession. Whatever may be the rule in other states, it can be said that here, no period of inaction merely has been held sufficient to justify a nuisance or trespass, unless it has continued for such a length of time as will authorize the presumption of a grant. The principle that so long as the legal right exists the owner is entitled to maintain his action in equity to restrain violations of this right, has been uniformly applied in this court. (*Tallman* v. *Met. El. R. Co., supra; Arnold* v. *H. R. R. R. Co., supra; Broiestedt* v. *S. S. R. R. Co.,* 55 N. Y. 220 ; *Campbell* v. *Seaman, supra; Ormsby* v. *Vt. Copper Mining Co.,* 56 N. Y. 623 ; *Haight* v. *Price,* 21 id. 241 ; *Viele* v. *Judson,* 82 id. 32 ; *N. Y. Rubber Co.* v. *Rothery,* 107 id. 310 ; *Chapman* v. *City of Rochester,* 110 id. 273.)

In the case of *Ormsby,* as appears by the head-note, it was held that " the doctrine of *laches* and acquiescence as a bar to an action through lapse of time, finds its just application in

respect to equitable rights only; as to legal rights, mere lapse of time before an action to enforce them, is of no moment, unless it comes up to the requirements of the Statute of Limitations."

In the *Chapman* case, this court held that the silence and inaction of the plaintiff while seeing the defendant construct sewers and spend large sums of money in completing a sewage system, which discharged the filth of the city into a stream belonging to the plaintiff, did not constitute a defense to an action for an injunction, no matter how long continued, unless accompanied by circumstances amounting to an estoppel.

It was held in *Haight* v. *Price,* " that no acquiescence short of twenty years repels the presumption that the diversion of a water-course was in hostility to the rights of the riparian proprietors, or authorizes the presumptien either of a grant or of license."

Judge EARL, in the *Campbell* case, said : " It is claimed that the plaintiffs so far acquiesced in this nuisance as to bar them from equitable relief. I do not perceive how any acquiescence short of twenty years can bar one from complaining of a nuisance, unless his conduct has been such as to estop him. * * * No act or omission of theirs induced the defendant to incur large expenses, or to take any action which could be the basis of an estoppel against them, and, therefore, there was no acquiescence or *laches* which should bar the plaintiffs within any rule laid down in any reported case."

In *Viele* v. *Judson,* Judge FINCH, in speaking of the cases where acquiescence had been held a bar, says: " In all of these the silence operated as a fraud and actually itself misled. In all there was both the specific opportunity and apparent duty to speak. And in all the party maintaining silence knew that some one was relying upon that silence, and either acting or about to act as he would not have done had the truth been told."

It was held in the *Broiestedt* case that the possession by a railroad company of a highway under a license given by statute, is presumed to be subordinate to the rights of the owner of the soil, and cannot be said to be adverse to him.

In the *N. Y. Rubber Co.* v. *Rothery,* the defendant had built expensive structures for manufacturing purposes and diverted the water from a stream adjoining plaintiff's premises for the purpose of supplying power to his machinery. It was claimed that the plaintiff, by her silence during the period when this work was going on, was barred of her action for damages. Judge PECKHAM, writing in the case, says: In this there was no element of an estoppel; to constitute it the person sought to be estopped must do some act or make some admission with an intention of influencing the conduct of another, or that he had reason to believe would influence his conduct, and which act or omission is inconsistent with the claim he proposes now to make. The other party, too, must have acted upon the strength of such admission or conduct." (See also *McMurray* v. *McMurray,* 66 N. Y. 176.)

But we have already referred to a sufficient number of cases in this court to show how uniformly and frequently we have adhered to the doctrine, where a legal right is involved, and, upon grounds of equity jurisdiction, the courts have been called upon to sustain the legal right, that the mere *laches* of a party, unaccompanied by circumstances amounting to an estoppel, constitutes no defense to such an action. Such is also the doctrine, generally, of the elementary writers. (2 Pomeroy's Eq. Jurisprudence, § 817; Bigelow on Estoppel, pp. 476 *et seq.*)

The same general principle has also been held in England. In the case of *Fullwood* v. *Fullwood* (L. R. [9 Ch. Div.] 176), FRY, Justice, says that "mere lapse of time unaccompanied by anything else has, in my judgment, just as much effect, and no more, in barring a suit for an injunction, as it has in barring an action for deceit."

And the head-note in *In re Maddever* (L. R. [27 Ch. Div.] 523), reads: " That as the plaintiff was coming to enforce a legal right, his mere delay to take proceedings was no defense, as it had not continued long enough to bar his legal right; the case standing on a different footing from a suit to set aside, on equitable grounds, a deed which was valid at law."

The Supreme Court of the United States have also laid down

the same rule in the recent case of *Menendez* v. *Holt* (128 U. S. 523), where Chief Justice Fuller, writing for the court, says: " Mere delay or acquiescence cannot defeat the remedy by injunction in support of the legal right, unless it has been continued so long and under such circumstances as to defeat the right itself. Hence, upon an application to stay waste, relief will not be refused on the ground that, as the defendant had been allowed to cut down half the trees upon the complainant's land, he had acquired by that negligence, the right to cut down the remainder. (*Attorney-General* v. *Eastlake*, 11 Hare, 205.)"

Even in cases where *laches* have been allowed to operate as a defense the question is to be determined in the discretion of the court upon all of the circumstances of the case. (*Fullwood* v. *Fullwood, supra.*)

There is nothing in the history of this case which induces us to suppose the court committed any error in the exercise of their discretion in granting the injunction appealed from.

The plaintiff had reason to suppose the defendants would discontinue their trespasses, or, if they were continued, they would resort to legal means to justify them. They had no reason to believe that the defendants deliberately intended to prosecute their enterprise, altogether regardless of the legal rights of others, and were justified in delaying a reasonable time in expectation that the defendants would eventually do justice to those whose property they were appropriating to their own use. The novelty of the questions presented; the vast number of people who were suffering similar injuries; the importance of the projected road for the public convenience, were all circumstances addressed to the discretion of the court upon the question of *laches*, and presented strong reasons why a strict rule should not be applied to the delay of the injured parties in seeking redress in this and similar cases.

The rule requiring promptness in soliciting the intervention of a court of equity, is always addressed to the discretion of the court, and varies much according to the situation of the parties, the nature of the relief demanded and the circum-

stances of the case. (*Calhoun* v. *Millard*, 121 N. Y. 82; *Fullwood* v. *Fullwood, supra; Rayner* v. *Pearsall*, 3 Johns. Chy. 578; *Atwater* v. *Fowler*, 1 Edw. Chy. 420.) What might be considered an unjustifiable delay in one case would be considered reasonable in another, and an equity court which should refuse its aid to a party in protecting a legal right without a valid and sufficient reason, would be subject to the criticism of shutting the doors of the temple of justice in the face of meritorious suitors and condemning them to suffer remediless wrongs. The fact that the defendants intended to make their structure permanent, or made it so in fact, constitutes no defense to the action. (*Krehl* v. *Burrell*, L. R. [7 Ch. Div.] 551; Same case on appeal, L. R. [11 Ch. Div.] 146.)

For the reasons stated, we think the judgment appealed from should be affirmed with costs.

All concur.

Judgment affirmed.