CARMICHAEL et ux. v. CITY OF TEXARKANA, ARK., et al.

(Circuit Court, W. D. Arkansas.   May 8, 1899.)

1. NUISANCES CREATED BY CITY—LIABILITY OF INDIVIDUALS FOR DAMAGES.
   Individual residents of a city, who, in compliance with law, have connected their premises with a sewer system constructed by the city, and deposit sewage therein, cannot be held liable for damages for the discharge of such sewage by the operation of the sewer system on or near the premises of a complainant, thereby creating a nuisance.

2. SAME—SUIT FOR ABATEMENT—PARTIES.
   Nor are such residents proper parties to a suit against the city for the abatement of the nuisance.

3. EQUITY PLEADING—MULTIFARIOUSNESS.
   A bill against a city to abate a nuisance created by its sewer system, in which certain residents of the city as individuals are joined as defendants, but who, as such, have no legal interest in the suit, is multifarious.

4. MUNICIPAL CORPORATIONS—LIABILITY FOR CREATION OF NUISANCE
   A municipal corporation, though authorized by statute to construct sewers, has no right to so construct its system as to discharge sewage on the lands of an individual, or in such place that it flows on his lands, and pollutes a watercourse thereon, or otherwise creates a nuisance by which he suffers damage.

5. EQUITY JURISDICTION—SUIT TO ABATE NUISANCE.
   A court of equity has jurisdiction of a suit by an individual to abate a nuisance caused by the construction by a city of its sewer system so as to discharge its contents on the complainant's lands, or near his residence, thereby invading his private rights, and causing him special injury.

6. NUISANCE—DAMAGES RECOVERABLE IN SUIT FOR ABATEMENT.
   In a suit in equity to abate a nuisance and to recover damages caused thereby, such damages only as are proved to have been sustained up to the time of the decree are recoverable.

This is a suit in equity against a city and others for the abatement of a nuisance alleged to have been created by the discharge of sewage from the sewer system of the city on the premises of complainants, and to recover damages caused to complainants thereby.   Heard on demurrers to bill.

The bill in this case alleges, in substance: That the plaintiffs are husband and wife, and citizens and residents of Bowie county, in the state of Texas. That the city of Texarkana, Ark., is a municipal corporation, duly incorporated under the laws of Arkansas, situate in Miller county, state of Arkansas, with J. W. Mullins as its mayor. That the Water Company of Texarkana, Ark., is duly incorporated and operated under and by virtue of the laws of the state of Arkansas, with R. A. Munson its superintendent and agent, and has its general office in Miller county, state of Arkansas; that F. W. Mullins, F. J. Ahern, R. J. O'Dwyer, O. O. Turner, Joe Huckins, Sr., W. J. Burhman, J. W. Harris, and R. A. Munson are citizens of Miller county, state of Arkansas.   That on July 1, 1888, the plaintiffs owned in their own right, in fee simple, and were in the possession and enjoyment of, a good homestead, consisting of 45 acres of land, situate in Bowie county, state of Texas, on the line of the state of Arkansas and state of Texas, said homestead consisting of block S, of 40 acres, and block P, of 5 acres, of the Jacob Carsen headright survey, according to the map of the Texas & Pacific Railway Company of Texarkana.   That between July 1, 1888, and July 1, 1896, they made permanent and valuable improvements on their said homestead, consisting of dwelling houses, outhouses, barns, gardens, orchards, vineyards, and by clearing, fencing, and putting in a high state of cultivation nearly all of their said homestead, which was of great value, from which homestead they for eight years received and enjoyed the greatest comforts, pleasures, support, and maintenance, without hindrance.   That there is

94 F.—36

running through said homestead a branch or brook for a distance of 200 yards or over, fed by springs of pure water, which creek of living water contributed greatly to the pleasure, comfort, health, and support of their family from July 1, 1888, to July 1, 1896. That several years before the bill was filed they commenced to run a dairy on their said home. They bought, raised, and kept 33 cows, of high grade cattle, keeping them in a meadow through which said springs of pure living water flowed continually, contributing very greatly to the health, comfort, and maintenance of their family, and for the market of Texarkana, said dairy business being a source of comfort and profit. That before July 1, 1898, the city of Texarkana, Ark., through its duly-constituted authorities, created a sewer-improvement district within its limits for the construction and maintenance of a system of sewerage for said district. That the said sewers were constructed, consisting of main sewers, pipes, and connections with the main and lateral sewers, with one main sewer leading to a point immediately opposite plaintiffs' homestead, about eight feet from the state line, on the Arkansas side. That said sewers are connected with the residences. business houses, privies, and sinks of the said defendants F. W. Mullins, P. J. Ahern, R. J. O'Dwyer, Q. O. Turner, Joe Huckins, Sr., W. J. Burhman, J. W. Harris, and R. A. Munson, from which said sewers receive, and convey to its dumping ground, all the filth, slops, excrement, urine, and foul and offensive putrid matter collected from said privies and sinks connected with said sewers. That the said sewer system, when completed, was turned over to the said city of Texarkana, Ark., which said city is now and has maintained and kept up and operated said sewer system for the last two years in connection with the said Water Company of Texarkana, Ark. That the defendants, acting together, are now, and have been for the last two years, using the said sewer mains, laterals, and pipes of the said sewer plant to receive and convey to its dumping ground the said offensive and putrid matter hereinbefore mentioned. That said defendants, acting together, by means of said sewer plant, its mains and pipes, have created a great cesspool of foul and putrid matter and sewer gas at the end of the main sewer pipe leading out of the city of Texarkana, which open sewer empties into a little stream, known as "Nix's Creek," at a point about eight feet east of the state line, in Miller county, in the state of Arkansas, which cesspool has been maintained and kept alive by the said defendants, acting together with others, for the last two years, by means of said Texarkana sewer plant. That said defendants, acting together, are now maintaining and keeping alive the said cesspool from day to day, and month to month, and year to year by means of the said sewer plant, its mains and pipes, and threaten to maintain and keep alive the said cesspool perpetually. That the said cesspool is a great nuisance, because it fouls, pollutes, corrupts, contaminates, and poisons the water of said Nix's creek flowing from said cesspool along down said creek for a distance of several miles, which said creek runs through plaintiffs' land and homestead and premises just below the cesspool for a distance of over 200 yards, depositing the foul and offensive matter referred to in the bed of said creek on plaintiffs' land and homestead continuously from month to month and year to year, the said creek being too weak and small to carry away the amount of such deposit. That by reason of such deposits and of the sewer gas and poison air arising out of and from said cesspool and being carried by the winds and drawn by the sun on plaintiffs' homestead at a distance of 250 yards, and by the creation of the germs of disease in the cesspool, which are carried by the winds upon plaintiffs' said homestead, they are deprived of the pleasure, comforts, and enjoyment thereof, the same being a standing menace to their pleasure, comfort, health, and lives, and that of their family, keeping them in constant dread of sickness and disease, and depriving them of the use and benefit of said creek running through their land and premises in a pure and natural state as it was before the creation of said cesspool by means of said open sewer, for the use of their family, dairy cattle, and other domestic animals, fowls, and fish. That plaintiffs were compelled to cease and quit using the water running through said creek for their family, dairy cows, and other domestic animals, as they were accustomed to do from July 1, 1888, to July 1, 1896, the time said cesspool and nuisance was created. That plaintiffs have been compelled, by reason of said nuisance, to obtain water for the use of their family, cows, domestic animals, fowls, etc., from the Texarkana Water Company, at a cost to

them of $500 for connecting their homestead and premises with its plant, and about $200 in water tolls from July, 1896, to July, 1898. The plaintiffs further allege that their land, homestead, and premises, by reason of said nuisance, have been damaged and decreased in value in the sum of $5,000, and in the sum of $2,000 in being deprived of the pleasures, comforts, enjoyment, support, and maintenance of their land, homestead, and premises for two years, and $2,000 by reason of the constant dread of disease and pestilence to themselves and family.

The plaintiffs further allege that the Water Company of Texarkana, Arkansas, acting by and through R. A. Munson, its superintendent and agent, on July 1, 1896, connected its water mains and pipes with the sewer mains, laterals, and pipes of the sewer plant of the defendant city of Texarkana, Ark.; that the said two defendant companies, acting together, connected said sewer mains, laterals, and pipes with the residences, business houses, privies, and sinks of all of the said defendants, as well as a great number of other inhabitants of the city of Texarkana, Ark.; and that they, the defendants, all acting together, have deposited a great amount of filth, slops, etc., in the said privies and sinks, and carried the same through the said sewer mains, laterals, and pipes by means of water furnished by the said defendant water company to the said dumping ground and open sewer,—the said cesspool hereinbefore mentioned,— from July 1, 1896, to the filing of the bill; and that all the defendants, acting together, are now carrying all of said filth and other putrid matter through said sewers onto plaintiffs' land, homestead, and premises, thereby creating and continuously maintaining the nuisance aforesaid. The plaintiffs further allege that there is no excuse for said open sewer, cesspool, and nuisance in the city of Texarkana. Ark., nor on the borders of the same, because the said open sewer could have been extended down the said creek valley underground to a safe distance from the city and from the inhabitants of the same, with small cost compared with the comfort, health, and lives of the plaintiffs and their family and the inhabitants of Texarkana. They allege that a judgment of a court of law would be inadequate for the damages sustained by them; that a court of law has no power to abate said nuisance, or to enjoin the defendants from keeping and maintaining the same; and that a court of equity alone has the power to abate said nuisance, and to enjoin and restrain the said defendants from keeping and maintaining the same. They further allege that they have dwelling houses, outhouses, and barns situated within 250 yards of the said open sewer, and a number of tenement houses within 150 yards of the same. They pray for a subpoena for all the defendants, and that they be required to answer the bill, an answer under oath being waived; (2) for an injunction pending the suit, and for judgment and decree against the defendants, abating the said open sewer, cesspool, and nuisance, and for an injunction perpetually enjoining and restraining said defendants from keeping and maintaining the same, and for the several sums of money specified as damages, and for all other further and proper relief.

No service has been had upon the defendant Huckins.

The defendant the Texarkana Water Company filed a special plea to the jurisdiction, upon which issue has been taken by the plaintiffs. Service being had upon the other defendants, each of them has filed separate demurrers. All the demurrers, except that of the city of Texarkana, Ark., are the same. These demurrers raise the questions as to whether the bill is not multifarious; and, second, whether there is not a misjoinder of defendants in the said bill; and, third, because the plaintiffs have an adequate remedy at law, and for want of equity in the bill. There are some other special grounds of demurrer which are not necessary to be noticed. The city of Texarkana, Ark., also interposes a separate demurrer, in which it raises the questions: (1) Of multifariousness, (2) Of misjoinder of defendants. (3) For the insufficiency of the bill. (4) An adequate remedy at law. (5) Defendant also interposes a special demurrer to the claim for $5,000 damages because the plaintiffs are not entitled to full compensation as for permanent injury and at the same time for an injunction to remove the cause. (6) Defendant also demurs to the bill because it is inconsistent, in this: that the plaintiffs allege and pray for past and prospective damages by reason of the said nuisance, and at the same time state grounds and pray for an injunction against the matters and things for which they

would be compensated in said damages. (7) Defendant demurs to the item of $5,000 by reason of the destruction of the plaintiffs' dairy business, and loss and benefit of the creek, because such damages are too remote, uncertain, and speculative. (8) Defendant demurs to the $10,000 damages because of plaintiffs' deprivation of the pleasure, comfort, enjoyment, support, and maintenance of their land, for the reason that such damages are too remote, uncertain, and speculative. And, lastly, because all the allegations of damages in the bill and the prayer thereof show that the defendant, in using the sewer, acted independently of the other defendants, and in compliance with the laws of the state of Arkansas.

F. M. Henry, for plaintiffs.
Williams & Arnold, for defendants.

ROGERS, District Judge. By the general statutes of Arkansas (Sand. & H. Dig. c. 112, § 5321 et seq.) the authority is conferred on cities and towns to create improvement districts, among other things for the purpose of constructing and maintaining sewers. The construction is done by a board of improvement composed of three members appointed by the city or town creating the improvement district. When the sewers are completed, the city is authorized to compel inhabitants to connect their sinks and closets therewith. The same power is given to erect and maintain waterworks, and to enforce proper connections with the premises of the inhabitants and the sewers. This bill, fairly construed, amounts to about this: The city of Texarkana, Ark., under the authority of a general statute of the state, through its board of improvement, has constructed a system of sewerage for itself, and by proper ordinances compelled the inhabitants thereof to connect their residences therewith. The water company, a private corporation, constructed and operated under proper ordinances of the city, furnishes water to the city and to its inhabitants, and is also connected with the residences and sewer system. No complaint is made that said sewerage system, as constructed, was not authorized by public law, nor is any negligence or carelessness alleged with reference to the manner in which the sewer system was constructed. No complaint is made that the water company has improperly constructed its system, or that its connections, or those of the inhabitants, are unlawfully or improperly made. The real complaint is that the city, in constructing its sewer system, constructed it in such a way that in its operation the filth and putrid matter of the city was carried by the said sewer system and deposited in close proximity to plaintiff's home, in a stream which ran through their premises, polluting the water, and depositing sewage upon their land, and creating a cesspool which gave forth foul and offensive odors, creating germs of disease, and thereby inflicting serious damage to the plaintiffs' land and the health and comfort of his family. It is not the natural drainage of the lands in proximity to this stream of which the plaintiffs complain. It is the sewage of the city, conducted by artificial means, and deposited in the stream. The water company is made a party defendant because the plaintiffs allege that in July, 1896, the defendant water company connected its water mains and pipes with the sewer mains, laterals, and pipes of the sewer plant of the defendant the city of Texarkana, and that the foul and putrid matter from the sinks and privies of the said city is car-

ried through the sewer mains, laterals, and pipes by means of water furnished by the water company; in other words, that the water furnished by the water company was the vehicle by which the sewage was taken and deposited upon plaintiffs' land. The remaining defendants, except the city and the water company, are made parties defendant simply because they have connected their premises with the sewer system of the city, and thereby contributed to the nuisance. The pleader seems to have had in mind, in drafting the bill, that it was the operation of the sewer system that created the nuisance, and that as the defendants other than the city were using the sewers for depositing their drainage, they, in common with all others so using them, were alike liable for any damages sustained by plaintiffs by reason of the city carrying and depositing the sewage in the stream which ran through their premises. In a certain sense it is true that the use of the sewer by the people of the city creates a nuisance. If the sewer was never used, there would be no offensive matter deposited, and if the water was not furnished by the water company there would be no vehicle to convey and deposit the filth on plaintiffs' land; but the sewer system was created, in pursuance of public law, by the city, for the very purpose of carrying off its sewage. In its construction neither the water company nor the other defendants to the suit are shown to have had any control or interest. The city undertook to construct, manage, and operate the sewers in such a way as to dispose of whatever sewage was deposited in them, in pursuance to lawful authority. Neither those who use the sewers nor the water company had anything to do whatever with the operation, control, or management of the sewers.

The question therefore arises upon the demurrer as to whether or not any of the defendants other than the city can be held responsible for the creation of the nuisance referred to. The question is not a new one, nor is there any dearth of authority, either in text-books or the reports, with reference thereto. The decisions are uniform that "an ordinance of a city corporation, directing the construction of a work within the general scope of its powers, is a judicial act, for which the corporation is not responsible; but the prosecution of the work is ministerial in its character, and the corporation must therefore see it is done in a safe and skillful manner." City of Logansport v. Wright, 25 Ind. 515; City of Little Rock v. Willis, 27 Ark. 577; 2 Wood, Nuis. § 787; Washburn & Moen Mfg. Co. v. City of Worcester, 116 Mass. 460; and numerous cases that might be readily cited. It must be conceded, in view of the facts stated in the bill, that the construction of the sewerage system of the defendant city was done in pursuance of public law, and it will not be assumed that it was negligently or improperly done, in the absence of allegations to that effect. It does not appear from the complaint that the connections made by the individual defendants with the defendant city's sewer system were made in violation of any city ordinance or statute of the state, nor will it be assumed in the absence of allegations to that effect. It must be assumed, therefore, that the connections so made were lawful, and in pursuance to the ordinances of the city. It would be an anomalous condition of things if the city, having the power to construct a sewer system, constructed it within the scope of its power, and in a proper way, and having the

power to compel its citizens to make connections therewith, if such citizens, when they had made such connections as they were compelled to do, should be held responsible in law for damages resulting therefrom; and still more anomalous if it were in the power of the plaintiffs to hold any one or more of such citizens as they might see fit to sue, responsible for the entire damages resulting from the nuisance created by all the people of the city. Such a result would be obviously unjust and inequitable, especially when the person so held responsible would have no action over against other persons who had contributed to the wrong.

Chipman v. Palmer, 77 N. Y. 51, is a case where the plaintiff kept a boarding house in Saratoga Springs, near a natural stream of water. The defendant kept a boarding house higher up the stream, the sewage therefrom running into the said stream. The sewage from a large number of hotels and other boarding houses also ran into the stream above the plaintiff's premises. The water of the stream thereby became corrupt and offensive, and some of the plaintiff's boarders left him on account of the stench. The plaintiff brought suit against the defendant, who kept a boarding house higher up the stream than his, for creating a nuisance, and undertook to hold him responsible for the act of all the others who were using the stream for the same purpose that he did. This case is distinguishable from the case at bar in this: that in this case none of the parties were acting in pursuance of any public law. At the same time they were all using the stream for exactly the same purpose, and each contributed to the causing of the nuisance. The court of appeals of New York held in this case that in an action of nuisance against several acting independently in polluting a stream by the passage of sewage from the premises of each, each is liable only to the extent of the separate injury committed by him. The court said:

"The defendant's act, being several when it was committed, cannot be made joint because of the consequences which follow in connection with others who had done the same or a similar act. It is true, it is difficult to separate the injury, but that furnishes no reason why one tort feasor should be liable for the acts of others who have no association, and did not act in concert, with him. If the law was otherwise, the one who did the least might be made liable for the damages of others, far exceeding the amount for which he was reasonably chargeable, without means to enforce contribution or adjust the amount among different parties. So, also, proof of an act committed by one person would entitle the plaintiff to recover for all the damages sustained by the acts of others who severally and independently may have contributed to the injury. Such a rule cannot be upheld upon any sound principle of law."

The court distinguishes this case from that class of cases where a direct personal injury is occasioned by the separate and concurring negligence of two parties at one and the same time, and proceeds to examine the cases cited by Wood on Nuisances, in paragraph 821, to show they do not support the text of the author. In support of the doctrine there laid down the court cite Williams v. Sheldon, 10 Wend. 654; Guille v. Swan, 19 Johns. 381; Wood v. Sutcliffe, 8 Eng. Law & Eq. 217; Coal Co. v. Richards' Adm'r, 57 Pa. St. 142; Seely v. Alden, 61 Pa. St. 302; Bard v. Yohn, 26 Pa. St. 482. The same doctrine is laid down in 16 Am. & Eng. Enc. Law, 980, note 9, where a number of cases are cited, and 2 Wood, Nuis. par. 831, note 4, and cases cited; Buddington v. Shearer, 20 Pick. 477. It is true that contained in the bill in

the case at bar is an allegation to the effect that all the defendants were acting together, but the fair construction and interpretation of the bill is that the parties sued had simply connected their residences, business houses, privies, and sinks with the defendant city's sewer system, and were using said sewer system for depositing such sewage from their premises. It will be seen, therefore, that the act of each one of these defendants is his separate and independent act, and that, if he could be held liable at all, he could only be held to the extent that he had contributed to the nuisance, and that the difficulty of determining that is no reason why he should be held liable for the whole nuisance. The object of this bill is to restrain the city from continuing the use of its sewer system and dumping the sewage of the city on the premises of the plaintiff, and to recover such damages from the city and its co-defendants as plaintiffs have suffered by reason of the nuisance complained of. It is clear, in view of the decisions above quoted, that no judgment for damages can be recovered against the defendants other than the city for the reasons heretofore stated. Assuming, therefore, for the sake of the argument. that all of the defendants may be joined for the purpose of restraining further use of the sewer, and for the abatement of the nuisance complained of, it is nevertheless apparent that the other defendants joined with the city cannot be united in this suit for the purpose of recovering a judgment in damages against them, and for the reasons stated in the cases heretofore cited. But is it true that the allegations in the bill would authorize an injunction against any of the defendants except the city? They are not engaged in operating the sewer. They are not engaged in depositing sewage of the city in the stream which flows through the plaintiff's premises. They simply connect with the sewer, and deposit their sewage in it, which the city undertakes, independently of them, to convey away. The bill does not ask that they be enjoined from depositing their sewage in the city's sewerage system, nor does it allege any facts which would warrant such relief. It simply prays for an injunction against the said defendants, abating the said open sewer, cesspool, and nuisance, and for judgment for damages. But, as shown, the defendants other than the city neither constructed the sewer, nor do they manage, control, or operate it, nor have they created the cesspool or nuisance complained of, nor are they keeping or maintaining it. They are simply doing that which the law authorized and compelled them to do, namely, dumping their sewage into the sewer system of the city. No restraining order, therefore, could be had against them upon the allegations of the bill. If, therefore, the plaintiffs are entitled to an injunction, and for damages as against the city, it is for acts and doings wholly separate and distinct from that of the other defendants, and they are therefore improperly joined, and the bill itself multifarious, and for these reasons the separate demurrers of the defendants F. W. Mullins, R. A. Munson, F. J. Ahern, R. J. O'Dwyer, Q. O. Turner, W. J. Burhman, and J. W. Harris, should be sustained.

But again (as decided in Chipman v. Palmer, supra), if several defendants, without authority of law, each drain the sewage from his residence into a stream, the drainage from all the residences thereby polluting the stream and creating a nuisance to the injury of a ri-

parian owner lower down, can only be held liable for such acts in a separate action, each to the extent of the injury committed by himself, it ought not to require authorities to show that, where the acts complained of are not only done in pursuance of, but are enjoined by, law, one defendant cannot be held liable for the acts of the others. 2 Wood, Nuis. § 831, note 4, and cases cited; Trowbridge v. Forepaugh, 14 Minn. 133 (Gil. 100); Thorpe v. Brumfitt, 8 Ch. App. 654; Blair v. Deakin and Eden v. Deakin, 57 Law T. (N. S.) 522. To hold that the defendants other than the city, under the allegations of this bill, are liable for connecting their premises with, and depositing their drainage in, the said sewers, because the city, which constructed and operated them, conducted the sewage into a stream running through plaintiffs' land, thereby polluting its waters and creating a nuisance, is in effect to say that the city had no power to compel its citizens to make such connections or deposit said sewage. For surely it cannot be successfully maintained that a man can be enjoined from doing what the law compels him to do, or that he can be held liable in damages for doing in a lawful way that which in itself is lawful, or which is enjoined upon him by law.

The question now arises whether the demurrer of the city of Texarkana is well taken. In the case of Washburn & Moen Mfg. Co. v. City of Worcester, 116 Mass. 461, Gray, C. J., delivering the opinion of the court, said:

"Where a city or a board of municipal officers is authorized by the legislature to lay out and construct common sewers and drains, and provision is made by statute for the assessment, under special proceedings, of damages to parties whose estates are thereby injured, the city is not liable to an action at law or bill in equity for injuries which are the necessary result of the exercise of the powers conferred by the legislature. But if, by an excess of the powers granted, or negligence in the mode of carrying out the system legally adopted, or in omitting to take due precautions to guard against consequences of its operation, a nuisance is created, the city may be liable to indictment in behalf of the public, or to suit by individuals suffering special damage. Haskell v. City of New Bedford, 108 Mass. 208; Merrifield v. City of Worcester, 110 Mass. 216; Brayton v. City of Fall River, 113 Mass. 218."

In Gould v. City of Rochester, 105 N. Y. 46, 12 N. E. 275, the statement of the case is as follows:

"The city of Rochester adjoins on the east the town of Brighton. It constructed sewers which discharged into ditches near the boundary between the city and town, which carried the sewage upon and over lands in Brighton, and ultimately into Thomas creek, a small stream running through the town, and having its outlet at Irondequoit bay. The ditches were constructed by the city under a general legislative authority to acquire land outside of the city limits and open ditches thereon to carry off the drainage of the city. It is found that the discharge of the sewage through the ditches and into Thomas creek created a nuisance in the town of Brighton, dangerous to the public health."

Much of the opinion is taken up in discussing the question whether the board of health of the town of Brighton were the proper parties to file the bill to restrain the nuisance, involving the construction of several statutes of New York, the case having been dismissed on that ground. The court of appeals reversed the lower court, and in the opinion said:

"The learned judge at special term, after asserting the proposition that the jurisdiction of the board of health of the town of Brighton over nuisances was

limited to nuisances existing within the territorial limits of the town, put his decision upon the ground that the order of regulation of August 1, 1884, was ineffectual, and in excess of the power conferred upon boards of health, because the nuisance in question was created and had its origin in the city of Rochester; and that the town board could make no valid regulation in respect thereto, because, in the language of the court, its powers 'are confined to the abatement of nuisances within the town, and the regulations they make have no force outside of the town lines.' It seems to us that this is quite too narrow a view of the situation. It is undoubtedly true that the authorities of Brighton could not go into the city of Rochester, and interfere with its sewers. But the collection of foul substances in the sewers was not the immediate cause of the nuisance. The immediate cause was the discharge by the city of the sewage, after it was collected in the sewers, into open drains constructed by the city across lands in the town of Brighton."

The court then say:

"We agree with the special term that the board could not execute its order by going within the city to close the sewers, but the fact that it had no power to enforce a summary jurisdiction of this kind does not justify the conclusion that it could not invoke the action of the court to enforce in an orderly way the abatement of the nuisance. * * * The objections to the maintenance of the action are quite technical, and ought not, we think, to prevail."

Stoddard v. Village of Saratoga Springs (Sup.) 4 N. Y. Supp. 745, is a case in which individuals sue in equity to restrain the city from the use of a sewer which emptied into a natural stream, causing a nuisance to plaintiffs' lands. The decision of the court is based upon exceptions to very elaborate findings of a referee granting a restraining order. The opinion sufficiently presents the facts, and is as follows:

"This is an action to restrain the defendant from discharging the contents of a sewer into a natural stream, which, after receiving such contents, passes through plaintiffs' land. There seems to be no dispute that the sewer does so discharge its contents, and that the result is injurious to plaintiffs' land. The defendant insists that the sewer is not a public sewer, does not belong to defendant, and that defendant is not responsible for its construction, or for the consequent damages. The sewer runs through Lawrence and Harrison streets to Division; thence through private grounds to Walworth, in which street it connects with the aforesaid stream (called 'Waterbury Brook'). That stream, passing along Walworth street, turns, and crosses plaintiffs' land. The sewer was built under a contract made by the defendant with one Adams in 1876, and the specification provides for the connection with the Waterbury brook. This contract purported to be made under Laws 1874, c. 271, §§ 3, 4. The defendant insists that the sewers therein provided for are private, because the expense is to be assessed on adjoining owners; and also that the petition was not in conformity with the act, because the sewer was partly on private property. As to the sewer being partly on private property, it may be that the owners of such property might have objected to its construction. But they have not, and the sewer has been built. The defendant, by this objection, says to plaintiff that it is not liable for injury to her land, because for the purpose of doing such injury the defendant trespassed on some other person's land. That is a poor excuse. Again, the contract for building the sewer was made by defendant. It is immaterial, then, so far as these plaintiffs are concerned, whether the defendant was or was not to be reimbursed by assessments on adjoining owners. The cost of improvements are often assessed on the land benefited, but yet the making of the improvement is the act of the municipality. If the whole of this sewer were on private land, then it might be improper to adjudge that the defendant should close or stop it, because they might have no right to enter on private land. But much of the sewer is in the street, and is therefore within defendant's control. When the defendant shall have done all in its power to prevent the injury which the plaintiffs suffer, it will then be time

to inquire whether any others are injuring her land. Nor can the defendant protect itself on the ground that the petition for this sewer was not such as to authorize defendant to construct it. If the defendant had no right to cause sewage to be discharged into a brook crossing plaintiffs' lot, it is no defense to say that the defendant had no right at all to construct the sewer. The defendant insists, further, that it is not liable, because the injury arises from the use of the sewer by third persons, who connect with it their privies and water-closets. But such was the very object of the sewer. A municipality does not (except from its own buildings) discharge sewage into a sewer, but it constructs the sewer that persons on its line may connect their houses with it, and discharge sewage into it; and it may not lawfully convey the foul material thus collected, and throw it on private property. The defendant further urges that the injunction is wrong because the defendant does not own, and has not control over, the 500 feet of the sewer which are on private property. We have above pointed out the answer to this. The defendant can control, stop up, or divert the sewer at Division street, or further up. The injunction only forbids the defendant to further allow the sewage and filth from Lawrence street sewer to flow on plaintiffs' land. Lawrence street is above Division. Nothing in the injunction requires defendant not to allow sewage, if any, which enters the sewer from the private property below Division street, to flow on plaintiffs' land. Whether the defendant would be liable in respect to such sewage we need not say. The referee has not held the defendant liable in respect to such sewage, and the subject is not before us. We think that the facts and the law sustain the referee's findings. The judgment is affirmed, with costs."

City of Jacksonville v. Lambert, 62 Ill. 520, is a case at law. The opinion sufficiently states the case, and is as follows:

"It is first insisted that the city is not liable to appellee for damages he may have sustained by reason of constructing the sewer so as to discharge the drainage from the city upon the premises of appellee; and it is said that cities have been compelled to construct such improvements for the preservation of the health of their citizens, and for the promotion of their comfort; and it is urged that the work was skillfully and well done. This may all be conceded, and still it does not follow that liability would not attach. It may be true that a city is liable to be compelled to afford sufficient drainage for the health and comfort of the people, but that would not authorize them to so construct the work as to destroy or seriously impair the value of the property of an individual. No one would suppose that the city would have the right by drainage and sewerage to collect all of the dirty water, swill, putrid matter, and garbage of the city, or any portion thereof, and lead it to and discharge it in the door yards of a portion of the inhabitants. That would be an invasion of private rights; that would be a violation of every rule of law, and shock the sense of justice entertained by every fair-minded man. Nor would it be in the slightest degree either a defense or excuse, to show that such a sewer or drain was constructed of the best material, and the work performed in the most skillful manner, and the plan on the most approved model. In performing such duties, they are required to construct such improvements in such a manner as to avoid injury to individual property. They have no right to concentrate the offal and filth of a city, which is a nuisance to the public, and discharge it upon the premises of an individual. If a public nuisance, and there is no means of making proper drainage without injury to individuals, let the community for whose benefit it is constructed, through their corporate government, by condemnation or otherwise, make compensation. Every principle of justice and the dictates of reason would say that it is wholly wrong to impose the burden of the nuisance on one or a few citizens. This precise question has not been before us, but in Nevins v. City of Peoria, 41 Ill. 507, and City of Aurora v. Reed, 57 Ill. 29, the same principle has been announced. In those cases it was held that the city had no right to so construct the drainage over the surface as to concentrate it on individual property, and, if they should, they would be liable for the damages thus inflicted. And the rule must apply with more force when all of the filth of various kinds accumulated and produced in a particular portion of the city is confined to a large sewer, and carried and discharged on private property, with its concentrated gases and offensive odors produced by putrefaction. The

city had no right to impose such a burden upon one individual, and in doing so, if injury was sustained, it must be held liable to make compensation."

The case of Byrnes v. City of Cohoes, 67 N. Y. 205, is a suit brought to recover damages for the flooding of plaintiff's house and premises, alleged to have been occasioned by the neglect of defendant to provide a sewer or outlet to carry off the water from the street gutter in front of plaintiff's premises. The court said:

"The facts established at the trial, as stated by the court at general term, and assumed on the argument here, were that the defendant made a gutter and curb on Main street (on which street the plaintiff's lot was situated), and conducted the water of the Fourth ward of the city of Cohoes down that street; that the curb and gutter ended opposite plaintiff's lot; that before the curbing was made there was a natural course, which took off the water another way; that the curbing brought it to the plaintiff's lot; that the gutter was not complete in front of plaintiff's place; that the water came down Main street and down the gutter, and had no outlet, and flooded plaintiff's house, and did the damage complained of; that the water flowed direct from the gutter on the premises; that a drain could have been built so as to carry off the water, and that a well hole was afterwards fixed so as to carry off the water. We are of opinion that on this state of facts the plaintiff was entitled to recover. Diverting the water from its natural course so as to throw it upon the plaintiff's premises, without providing any outlet, and thus injuring his building, was a wrong for which he was entitled to redress. The cases cited on the part of the appellant to the effect that a municipal corporation is not liable for an omission to supply drainage or sewerage do not apply to a case where the necessity for the drainage or outlet is caused by the act of the corporation itself."

In Chapman v. City of Rochester, 110 N. Y. 273, 18 N. E. 88, a bill was filed to restrain the defendant from polluting a natural stream flowing through plaintiff's premises, and recovery of damages caused thereby. A judgment for $1,200 and a restraining order were granted. The court of appeals of New York, in deciding the case, said:

"The plaintiff was the owner and occupant of certain premises, containing more than four acres of land, in the town of Brighton, adjoining the city of Rochester, and watered by a stream known as 'Thomas Creek,' which, rising in that city, and fed by springs of pure water, ran northwardly and across the plaintiff's premises into Irondequoit Bay. He collected its water into an artificial basin, making it serve as well for domestic uses as the propagation of fish, and from it, in due season, he also procured a supply of ice. The defendant thereafter constructed sewers, and through them discharged not only surface water, but the 'sewerage from houses and contents of a large number of watercloset's,' into Thomas creek, above the plaintiff's land, with such effect as to render its water unfit for use, and cover its banks with filthy and unwholesome sediment. These and other facts well warranted the conclusion of the trial court that the act of the defendant in thus emptying its sewers constituted an offensive and dangerous nuisance. Moreover, the plaintiff is found to have sustained a special injury to his health and property from the same cause, and we find no reason to doubt that he is entitled, not only to compensation for damages thereby occasioned, but also to such a judgment as will prevent the further perpetration of the wrong complained of. Goldsmid v. Commissioners, L. R. 1 Eq. 161, 1 Ch. App. 348. In view of the principle upon which these and like decisions turn, the objections of the learned counsel for the defendant against the judgment appealed from are quite unimportant. The filth of the city does not flow naturally to the lands of the plaintiff, as surface water finds its level, but is carried thither by artificial arrangements prepared by the city, and for which it is responsible. Nor is the plaintiff estopped by acquiescence in the proceedings of the city in devising and carrying out its system of sewerage. The principle invoked by the appellant has no application. It does not appear that the plaintiff in any way encouraged the adoption of that system, or by any

act or word induced the city authorities to so direct the sewers that the flow from them should reach his premises. There is no finding to that effect, and the record contains no evidence. In fine, the case comes within the general rule which gives to a person injured by the pollution of air or water, to the use of which, in its natural condition, he is entitled, an action against the party, whether it be a natural person or a corporation who causes that pollution."

See, also, City of Atlanta v. Warnock (Ga.) 23 Lawy. Rep. Ann. 301, and notes (s. c. 18 S. E. 135), where many cases are cited. See, also, cases cited in note to Chapman v. City of Rochester (N. Y. App.) 1 Lawy. Rep. Ann. 296 (s. c. 18 N. E. 88).

The following propositions may be taken as established by an almost unbroken line of authorities: It is immaterial, as affecting the liability of the city, whether the contents of the sewer are discharged directly on the property of an individual or at such point that the sewage and other refuse taken along with it must necessarily be carried there by a conduit or gravitation. Chapman v. City of Rochester, supra. If a municipal corporation, by its system of constructing sewers, renders an outlet necessary, it must provide one. City of Evansville v. Decker, 84 Ind. 325; City of Crawfordsville v. Bond, 96 Ind. 236; Van Pelt v. City of Davenport, 42 Iowa, 308; Byrnes v. City of Cohoes, 67 N. Y. 204; City of Ft. Wayne v. Coombs, 107 Ind. 75, 7 N. E. 743. It cannot discharge its sewers on private property, and, if it does so, it is prima facie liable. O'Brien v. City of St. Paul, 18 Minn. 176 (Gil. 163); 2 Dill. Mun. Corp. 987. Where the city has emptied one of its sewers on private land, it is a direct violation of the owner's rights, a continual trespass on his property, and the city is liable, just as any private person would be. Beach v. City of Elmira, 22 Hun, 158; Bradt v. City of Albany, 5 Hun, 591. A municipal corporation has no right to collect the sewage of a large portion of a city, and, by artificial channels, cast it up on the lands of another; and for such acts it is liable in damages, whether or not they be done in conformity to a plan adopted by its officers, judicial or otherwise. Noonan v. City of Albany, 79 N. Y. 475; Byrnes v. City of Cohoes, 67 N. Y. 204; Richardson v. City of Boston, 19 How. 263; Sleight v. City of Kingston, 11 Hun, 594; Barton v. City of Syracuse, 36 N. Y. 54; Bastable v. Same, 8 Hun, 587; Beach v. City of Elmira, 22 Hun, 158; Rochester White Lead Co. v. City of Rochester, 3 N. Y. 466; Perry v. City of Worcester, 6 Gray, 544; Ashley v. City of Port Huron, 35 Mich. 296; Story v. Railway Co., 90 N. Y. 122; Seifert v. City of Brooklyn, 101 N. Y. 136, 4 N. E. 321. A city is liable if it undertakes to collect water in one channel and wrongfully pours it upon another's land. Lipes v. Hand, 104 Ind. 503, 1 N. E. 871, and 4 N. E. 160; City of Evansville v. Decker, 84 Ind. 325; Weis v. City of Madison, 75 Ind. 241; Railroad Co. v. Stevens, 73 Ind. 278; Templeton v. Voshloe, 72 Ind. 134; Rice v. City of Evansville, 108 Ind. 7, 9 N. E. 139; Barrett v. Association (Ill. Sup.) 42 N. E. 891. This principle has been uniformly applied to the acts of such corporations in constructing sewers, drains, and gutters, whereby the surface water of a large territory, which did not naturally flow in that direction, was gathered into a body, and was precipitated upon the premises of an individual, occasioning dam-

ages thereto. A court of equity has jurisdiction, in a proper case, not only to determine the question whether a nuisance in fact exists, but to make a decree that it be abated; but in such case it must clearly appear that the complainant has title to the water course or the land under it (if it be a water course that is complained of), and that the nuisance is made out. Earl v. De Hart, 12 N. J. Eq. 280; Van Bergen v. Van Bergen, 2 Johns. Ch. 272; Hammond v. Fuller, 1 Paige, 197. The right of an individual citizen to abate a public nuisance arises only when it becomes an obstruction to the exercise of his private rights, or when he receives some special or peculiar injury therefrom, distinct from what he suffers in common with the public. Bigelow v. Bridge Co., 14 Conn. 565; Frink v. Lawrence, 20 Conn. 117; Irwin v. Dixon, 9 How. 10; Draper v. Mackey, 35 Ark. 497; Railroad Co. v. Ward, 2 Black, 485; 1 Suth. Dam. 766; and the numerous cases cited in the footnote to South Carolina Steamboat Co. v. South Carolina R. Co. (S. C.) 4 Lawy. Rep. Ann. 209 (s. c. 9 S. E. 650).

In 2 Add. Torts, § 1085, the author lays down the general rule that:

"Where commissioners of sewers and boards of health have obtained statutory powers of drainage into rivers, streams, and natural water courses, the power must be exercised so as not to create a nuisance, or interfere with the private rights of individuals. If a riparian proprietor has a right to enjoy a river so far unpolluted that fish can live in it and cattle drink of it, and the town council of a neighboring borough, professing to act under statutory powers, pour their house drainage and the filth from water-closets into the river in such quantities that the water becomes corrupt and stinks, and fish will no longer live in it, nor cattle drink it, the court will grant an injunction to prevent the continued defilement of the stream, and to relieve the riparian proprietor from the necessity of bringing a series of actions for the daily annoyance. In deciding the right of a single proprietor to an injunction, the court cannot take into consideration the circumstance that a vast population will suffer by reason of its interference. 'There are cases at law,' observes Sir W. P. Wood, V. C., 'in which it has been held that, where the question arises between two portions of the community, the convenience of one may be counterbalanced by the inconvenience of the other, where the latter are far more numerous. But in the case of an individual claiming certain private rights, and seeking to have those rights protected, the question simply is whether he has those rights, and not whether a large population will be inconvenienced by measures taken for their protection.'"

The same author (section 1049), says:

"Generally speaking, where local boards are authorized and required to execute drainage works in a particular district, and to make compensation to parties sustaining injury therefrom, they have no power to collect together the sewage, and pour it into streams which were previously pure, so as to create a nuisance, and deteriorate the value of the adjoining land. A power to take possession of streams and to cover over open water courses for drainage purposes, and to give compensation therefor, gives to the board no power by implication to pollute water which was previously substantially pure"

The rule is laid down in this circuit, in Emigration Co. v. Gallegos, 32 C. C. A. 475, 89 Fed. 773, that:

"A continuing trespass upon real estate, or upon an interest therein, to the serious damage of the complainant, warrants an injunction to restrain it. A suit in equity is generally the only adequate remedy for trespasses continually repeated, because constantly recurring actions for damages would be more

vexatious and expensive than effective. 2 Beach, Inj. §§ 1129, 1146; Tallman v. Railroad Co., 121 N. Y. 119, 123, 23 N. E. 1134; Uline v. Railroad Co., 101 N. Y. 98, 122, 4 N. E. 536; Galway v. Railroad Co., 128 N. Y. 132, 145, 28 N. E. 479; Evans v. Ross (Cal.) 8 Pac. 88."

It is said in Barrett v. Association (Ill. Sup.) 42 N. E. 891, 892:

"But it is a well-recognized branch of equity jurisdiction to restrain by injunction the fouling of running streams that pass over the lands of others by connecting sewers therewith, or by other means, so as to endanger the comfort and health of others, or to cause irreparable injury to their property rights. 2 High, Inj. p. 508, §§ 794, 795; People v. City of St. Louis, 5 Gilman, 351; Wahle v. Reinbach, 76 Ill. 322; Metropolitan City Ry. Co. v. City of Chicago, 96 Ill. 620; Minke v. Hopeman, 87 Ill. 450; Catlin v. Valentine, 9 Paige, 575; Lyon v. McLaughlin, 32 Vt. 423; Village of Dwight v. Hayes, 150 Ill. 273, 37 N. E. 218."

"By an 'irreparable injury' is not meant such injury as is beyond the possibility of repair, or beyond possible compensation in damages, nor, necessarily, great injury or great damage, but that species of injury, whether great or small, that ought not to be submitted to on the one hand or inflicted on the other, and which, because it is so large on the one hand and so small on the other, is of such constant and frequent occurrence that no fair or reasonable redress can be had therefor in a court at law." 2 Wood, Nuis. § 778.

In footnote 4 to that section is reported the case of Clowes v. Waterworks Co., 8 Ch. App. 125. The opinion was delivered by Lord Chief Justice Mellish, and is instructive, because it lays down the rule with reference to injuries of the character alleged here which has commended itself to the courts of England. He quotes approvingly from an opinion delivered by Vice Chancellor Bruce, in Attorney General v. Sheffield Gas Co., 19 Eng. Law & Eq. 648, as follows: "It seems to me that even slight infringements of rights respecting real estate require to be watched with a careful eye and repressed with a strict hand by a court of equity, where it can exercise jurisdiction," and adds that this rule has since become the rule which governs the English courts in all such cases.

I have failed to find a single well-considered case where the American courts have not granted relief under circumstances such as are alleged in this bill against the city, and the most careful research has failed to disclose a single case where defendants depositing their drainage in a system of sewers erected by a city under authority of law have been held responsible for a nuisance created by a city in depositing such sewage so as to create a nuisance, and inflict damage upon others.

Separate demurrers have been sustained to the bill in favor of each of the defendants except the water company, Joe Huckins, Sr., and the city. No service has been made on Huckins, Sr., and he has not appeared. The water company stands on a plea to the jurisdiction, which has not been heard. On the demurrer of the city, in view of the authorities quoted, the court is of opinion that:

1. The bill is multifarious, because the allegations thereof do not authorize any relief against any of the defendants except the city, but do warrant relief against the city. In the case of Barcus v. Gates, 32 C. C. A. 345, 89 Fed. 791, Judge Morris says:

"Multifariousness arises from the fact either that the transactions which form the subject-matter of the suit are so dissimilar and separate that they

cannot definitely be tried together in one record, or that some defendant is able to say that as to a large part of the transaction set out in the bill he has no interest or connection whatever."

The court is of opinion that all the defendants except the city can truthfully say that they have no interest or connection whatever with the transaction set out in the bill. The demurrer, therefore, is sustained on the ground that the bill is multifarious.

2. The demurrer is sustained because there is a misjoinder of parties in this suit. None of the defendants should be joined with the city in this action.

3. The demurrer is sustained on the ground that the plaintiffs in this suit can only recover against the city such damage as they show they have sustained up to the time the decree is rendered, and not for prospective damages, for the reason that, if an injunction is granted, it cannot be assumed it will be violated, and that other damages will be sustained, and for the reason, if a restraining order . is finally refused, then the bill should be dismissed for want of jurisdiction in the court, and the plaintiffs remitted to a court of law for such damages as they may have sustained. In short, the jurisdiction of the court in this case rests upon the fact that the plaintiffs are suffering from a continuing nuisance created by the city.

4. The court is of opinion that the sixth ground of demurrer— that the city was acting under the laws of the state—is not well taken. The state cannot authorize such a nuisance as this, and, in the opinion of the court, has not done so. Bacon v. City of Boston, 154 Mass. 100, 28 N. E. 9. On this ground, therefore, the demurrer is overruled.

5. The seventh ground of demurrer, namely, that the plaintiffs have an adequate remedy at law, is not well taken, and the demurrer is overruled as to that ground.

6. The eighth ground of demurrer, namely, that the plaintiffs are not entitled to equitable relief, is not well taken. The bill states a good cause of action against the city if sued alone, and the demurrer on this ground is overruled.