DAVID WILSON, Complainant,

v.

MUNICIPALITY OF ARECIBO, Dft.

Mayaguez, Equity, No. 175.

1. At least since the passage of the municipal act of February 14th, 1906, a municipality of Porto Rico may sue and be sued in all manner of legal proceedings.

2. Although the remedy by injunction does not lie in favor of a citizen suffering mere inconvenience and incidental injury resulting to him simply from the adoption of a plan or a system of sewers, yet, where

Wilson v. Arecibo.

the acts complained of amount to an actual taking of his property, or a direct invasion of his property rights without just compensation or due process of law, the remedy by injunction will lie.

3. Even the legislative assembly cannot authorize a municipality to erect or maintain a nuisance, and if a nuisance is being maintained from which the complainant is suffering special injury, his right of action accrues.

4. A court of equity has jurisdiction to examine into the whole question, with a view to enjoining the nuisance and affording relief in the way of damages in the same suit, when, by reason of the circumstances, a suit at law would afford inadequate relief.

5. Where, upon a careful reading of a complaint, the court is convinced that it cannot intelligently pass upon the issues between the parties without having all the facts before it, it will enter an order overruling the demurrer, reserving all questions of jurisdiction.

Opinion filed December 10, 1906.

*Messrs. Horton & Cornwell,* solicitors for complainant.

*F. H. Dexter, Esq.,* solicitor for defendant.

RODEY, Judge, delivered the following opinion:

The complainant, alleging himself to be a citizen of the King of Great Britain, residing in Porto Rico, files his bill herein to enjoin the defendant, a municipality of Porto Rico, from maintaining a nuisance, because of the maintenance of which he has suffered special damage; and, in addition, to obtain a money decree for the injury.

The alleging and charging part of the bill is as follows:

Note.—Injunction against a nuisance maintained by a municipal corporation, see note to Atlanta v. Warnock, 23 L.R.A. 301; duty and liability of municipality as to drainage, see note to Georgetown v. Com. 61 L.R.A. 673.

"That your orator, in the year 1863, acquired by purchase the estate in fee of the following described piece or parcel of land containing one cuerda, more or less, situate in the municipality of Arecibo, Porto Rico, improved with a repair shop and foundry with all its tools and instruments, together with a one-story frame house.

"All the above situated in the city of Arecibo, fronting upon Utuado street, and bounded on the east by the house and land of Joachin Masnan, on the north by the highway which leads to the town of Utuado, on the west by the succession of Ulanza, on the south by the creek "Peadomo;" and that your orator ever since has been, and now is, the owner in fee of the above-described property. That since your orator purchased the said property, as aforesaid, he has made additional valuable and permanent improvements on same, consisting of a large and costly house of residence in which your orator, together with his family, resided up and until the wrongful acts of the defendant hereinafter to be set forth. That your orator also enlarged and remodeled the foundry and repair shop upon the said premises and made other valuable improvements upon the said property. That the value of said repair shop and foundry is about $20,000, and that the value of said house and piece of land is about $6,000.

"That from the said property your orator and his family had enjoyed for years the greatest comfort, pleasure, support, and maintenance without hindrance. That running at the north and in front of your orator's premises, at a distance of about 30 meters from your orator's house and foundry and workshop, is a stream or river known as the Santiago river, and at the back and at the sides of your orator's premises there runs a stream or river known as the "Peadomo" river, which bounds

Wilson v. Arecibo.

your orator's premises as aforesaid upon the south. That the said Santiago river and Peadomo river have their junction or confluence at a distance of about 200 meters below the house and workshop of your orator.

"That the said two streams or rivers were streams of fresh water which contributed greatly to the pleasure, comfort, health, and support of your orator and his family. That in the early part of the year 1903, while your orator and his family were in the quiet enjoyment of the said premises as aforesaid, the defendant, the municipality of Arecibo, did commence to construct a system of public sewers, pipes, and connections with the main sewers and lateral sewers. That in the said projected system of sewers the sewage from the city of Arecibo was to be discharged into the Santiago river by four sewer pipes at points on the opposite side of the river from the premises of your orator, ranging from a distance of 30 meters to a distance of 200 meters from the house and workshop of your orator. That your orator at once, upon learning of the proposed plan of sewers, and before the said pipes were laid, duly protested and petitioned the alcalde and city council of Arecibo, and also protested to the board of health of Porto Rico against the discharge of sewage into the Santiago river in the vicinity to your orator's premises as aforesaid.

"That in the month of June, 1903, the wife of your orator went to San Juan and made a protest in person before Dr. William Fawcett Smith, then the director of health for Porto Rico, at which time the said Dr. William Fawcett Smith assured the wife of your orator that the sewage from the city of Arecibo would not be discharged into the Santiago river, but would be discharged at some other place. That notwithstanding this assurance, the defendant, several months thereafter, re-

Wilson v. Arecibo.

sumed the construction of said sewerage system, and did lay its main pipes so that the sewage would be discharged by four main pipes as aforesaid into the Santiago river in the vicinity of the premises of your orator, and that the said defendant did connect the said sewerage system with various and sundry public buildings, business houses, residences, privies, sinks, and cesspools in the municipality of Arecibo, from which said sewerage system did receive all the filth, slops, excrement, urine, and foul and offensive putrid matter connected with the said buildings, privies, sinks, and cesspools. And that the said defendant, by means of the said sewerage system, its mains and pipes, did cause to be discharged into the Santiago river immediately opposite to the premises of your orator, by four pipes as aforesaid, all of the said filth, slops, excrement, urine, and foul and offensive matter.

"That there is little or no current in the said Santiago river at its confluence or conjunction with Peadomo river, nor is there hardly any current in the said Peadomo river at said confluence, so that the said filth, slops, excrement, urine, and foul and offensive putrid matter, instead of passing down the river, becomes stagnant upon the surface of the water in the said Santiago river, and said current is part of the time reversed on account of tides of the sea, so that part of said filth, slops, excrement, urine, and foul and offensive putrid matter is backed up into the Peadomo river at the side and at the back of your orator's premises, thus causing in front, at the side, and at the back of your orator's house and at the workshop or foundry of your orator, the said filth, slops, excrement, urine, and foul and offensive putrid matter to remain in and upon the water, and, by the rise and fall of the waters in said rivers, to be deposited upon the land in the immediate vicinity in front,

Wilson v. Arecibo.

at the back, and at the side of your orator's residence and workshop. That by reason of such deposits of filth, slops, excrement, urine, and foul and offensive putrid matter and of the sewer gas and pollution arising at and from the said sewage as aforesaid being carried by the winds and drawn by the sun upon and around your orator's residence and workshop, and by the creation of the germs and disease both upon the land and in the water in the immediate vicinity of said residence and workshop, that your orator and his family, his servants and employees, were deprived of the pleasure, comfort, and enjoyment of said premises, the same being a constant menace to their pleasure, comfort, health, and lives, keeping them in constant dread of sickness and disease, and depriving your orator of the use and benefit of the said rivers.

"That your orator renewed his protest and petition to the municipality of Arecibo and to the insular department of public health, and also appealed to the secretary of Porto Rico and to the acting governor of Porto Rico, but without avail. That in the summer of 1904 the stench, foul and sickening odors caused by said sewage as aforesaid about the residence of your orator became so unbearable that your orator's family became sick and ill, so that it was necessary for your orator to send them to the city of San Juan that they might remain there for medical assistance and until your orator might procure and make ready for them another home or place of residence in the municipality of Arecibo and away from the said stench and foul odors caused by the said sewage as aforesaid. That in the fall of 1904, one of your orator's nephews, who was living with your orator on the said premises, became sick and died by reason of the said foul and sickening odors.

"That about the month of January, 1905, on account of com-

plaints made by your orator to the governor of Porto Rico concerning the said sewerage system, an alleged expert was sent to examine the said sewerage system, and particularly the outlet of said system of sewers. That in accordance with the report of said expert, the director of health, charities, and corrections issued an order that no more water-closets or privies were to be connected with the said sewer pipes. This order was, however, several months later revoked, and in the spring of 1905, the defendant did connect various other buildings, water-closets, privies, and cesspools with the said sewer pipes.

"Your orator respectfully represents that the use and employment of the said system of sewage is constantly increasing and that the amount of sewage discharged into the said Santiago river in the vicinity of the property of your orator, as aforesaid, is constantly increasing, and that the said defendant continues to maintain said system of sewers from day to day and month to month, and threatens to maintain said nuisance perpetually.

"That your orator has been compelled on account of the unsanitary, noxious, and unhealthy stench and bad odors, to abandon his said residence and temporarily to provide another home or place of residence for himself and his family at a cost of $2,000.

"That your orator's business at the foundry and repair shop is receiving irreparable damage by reason of the said stench and foul odors arising from the said sewage as aforesaid.

"That by reason of said nuisance the property of your orator as aforesaid has decreased in value in the sum of $10,000, and your orator has been damaged in the sum of $5,000, in being deprived of the pleasures, comforts, enjoyments, support, and maintenance of the said property during the continuance of the said nuisance as aforesaid, and has been damaged to the sum

of $5,000 by reason of the constant dread of disease and pestilence to himself and his family.

"That the said nuisance as aforesaid is a menace to the comfort, health, and life not only of your orator, but of all persons residing in the vicinity of the outlet of said sewer system, and your orator attaches to this, his bill of complaint, marked exhibit A, an English translation of a petition to the alcalde of Arecibo, signed by more than two hundred and fifty residents living in the vicinity of said nuisance, setting forth that the outlet of said system of sewers is a menace to the public health, and praying for an abatement of said nuisance.

.   .    .    .    .    .    .    .    .    .    .    .    .    .    .    .

"And your orator further prays that a writ of injunction may be issued to the said municipality of Arecibo, enjoining it, its officers, agents, employees, and servants, from further continuing or maintaining said nuisance during the pendency of this suit, and directing the said defendant, within a certain time, to be fixed by the order of this honorable court, to so change and modify the outlet of its said systems of sewers so that the sewage as aforesaid may not cause or create a nuisance with regard to the property of your orator; and, upon the final hearing of said cause, that said injunction shall be made perpetual, and that your orator may be decreed damages for the injuries already suffered up and until the time of the entering of the final decree in this case in the sum of $20,000, and for such other and further relief as may be proper in the premises."

The defendant demurred to this complaint, alleging:

"That the complainant, in and by its said bill of complaint, has no right of action against defendant, municipality of Arecibo, for the reason that the matters and things set forth in said bill of complaint do not show any ground of relief in behalf of

complainant, and only set forth certain acts and things done by the municipality of Arecibo in the exercise of its political powers and in connection with the plan which the common council of Arecibo has adopted for the purpose of the sewage system of Arecibo; and because the said plan so adopted by the common council of Arecibo is the best which it, in the exercise of its legislative capacity, could adopt, and because—

## II.

"This court has no jurisdiction to try this cause, because even though defendant should be held liable for the alleged injuries set forth in the bill of complaint herein, it appears from the latter that complainant abandoned the property described in the said bill of complaint, and that because thereof and of the matters and facts set forth in the bill, he is damaged in the sum of twenty thousand dollars ($20,000), for which sum he prays judgment; and defendant says that this court, sitting as a court of equity, has no jurisdiction to render a money judgment for damages, because of the matters and facts set forth in the bill of complaint, and that complainant's remedy is at law, where he can obtain full and adequate relief if in fact he is and has been so damaged."

The issue thus raised is a very important one and has received a great deal of attention from the courts of the several states of the Union, as well as from the Supreme Court of the United States. Oral arguments were made by counsel for both parties and they each thereafter filed their views in writing.

Neither the complaint nor the demurrer, as we regard it, is drawn as carefully as it might be to present the clear-cut issue the case is capable of being reduced to; in fact, counsel did not, either in their briefs or arguments, confine themselves to the strict issue raised. Respondent raises, as its first point in its

brief, that the legislative assembly of Porto Rico has not authorized suit to be brought against a municipal corporation of the insular government in this sort of a case. We cannot agree with this view, because, under § 32 of the Foraker act (31 Stat. at L. 77, chap. 191), Congress gave the local assembly of the island power to "create, consolidate, and organize" municipalities in the island; and, after enacting and repealing several general municipal laws, beginning in 1902, the assembly finally enacted the law of 1906, on February 14th, just a few days before the filing of this suit. Session Laws P. R. 1906, p. 107. Sec. 2 of this act reads: "The inhabitants of any municipality within the meaning of this act are hereby constituted a body politic and corporate, which shall have perpetual succession, may use its own official seal, sue and be sued, enforce and defend actions at law and all manner of legal proceedings, . . ."

The next point made in the brief against the bill is that: "The establishment and construction of the sewers described in the bill of complaint is in pursuance of a plan adopted by the municipality of Arecibo in the exercise of its governmental, legislative, and public functions, and its discretion, quasi-judicially exercised by it in such plan, is not subject to review by the courts."

It is insisted that the complaint on its face shows that it is based upon the alleged defective system or plan of sewers constructed by the defendant, and not upon a defective execution of the plan. That complainant is not entitled to recover in such a case, even though he suffered the damage and inconvenience set out.

It would seem as if this latter proposition or statement contains matter for a plea in abatement or an answer, because it is a mere conclusion; we see nothing in the complaint itself which

indicates that the plan adopted by the municipality for its sewers is "the best that could be adopted."

That a municipality is not responsible to its citizens for inconvenience and incidental injury resulting to them simply from the adoption of a plan or system of sewerage, when there is no defect in the construction of the same, is probably, as a general proposition of law, well settled. We have examined the case of Child v. Boston, 4 Allen, 41, 81 Am. Dec. 680, which appears to be considered a leading case on the subject, and have gone through a large line of cases considered by the Supreme Court of the United States on the subject, in which many of the conflicting cases in the several states are reviewed. The cases in the Supreme Court of the United States which treat most directly of the questions involved are: Northern Transp. Co. v. Chicago, 99 U. S. 635, 25 L. ed. 336; Chicago v. Taylor, 125 U. S. 161, 31 L. ed. 638, 8 Sup. Ct. Rep. 820; Marchant v. Pennsylvania R. Co. 153 U. S. 380, 38 L. ed. 751, 14 Sup. Ct. Rep. 894; Gibson v. United States, 166 U. S. 269, 41 L. ed. 996, 17 Sup. Ct. Rep. 578; Meyer v. Richmond, 172 U. S. 82, 43 L. ed. 374, 19 Sup. Ct. Rep. 106. In the latter case, Mr. Justice McKenna enters into a review of most of the other cases here referred to, and others, and it is very profitable reading as expounding the view of that court regarding the proper rule to be observed in distinguishing between cases where citizens must suffer the inconvenience and injury resulting from municipal improvements as an incident to their citizenship or ownership of property in the municipality, and cases where damages can be recovered when the acts complained of amount to an actual taking of their property without just compensation or due process of law, as the case may be.

An examination of the very large number of authorities to

Wilson v. Arecibo.

which the text-books, digests, and reports, as well as counsel, have guided us, leads to the conclusion that the rule is, that not even a legislative assembly can authorize a municipality to erect or maintain a nuisance, and that if a nuisance is being maintained by a municipality, from which a complainant is suffering special injury, a right of action accrues. We think, after an examination of the authorities, that a court of equity has jurisdiction in such cases to examine into the whole question with a view to enjoining the nuisance and affording relief in the way of damages in the same suit even, if necessary, when, by reason of the circumstances, a suit at law would afford inadequate relief.

A case profitable to read in this connection is that of Carmichael v. Texarkana, 94 Fed. 561. It reviews at length a very large number of the authorities, and shows the rule to be that a city, no more than an individual, has any right to exercise its power so as to create a nuisance. Of course, the existence of the nuisance is always a question of fact for the court or jury.

Counsel for complainant cites a large number of cases in his brief, many of which seem to sustain his position that, on the alleged facts, a court of equity has jurisdiction to grant the relief prayed for.

A careful reading of the bill of complaint convinces the court that it cannot intelligently pass upon the issues between the parties without having all the facts before it. The allegations, if true, and a demurrer admits them, indicate that the complainant is suffering grave injury to his personal and property rights, and we are inclined to think that the municipality may have negligently exercised its powers, and is maintaining an intolerable nuisance; but this can be brought to the certain knowledge of the court only by plea or answer, and therefore the demurrer

II. Porto Rico.—19.

Wilson v. Arecibo.

will be overruled *in toto,* with a view to getting the facts fully before the court.

In cases of grave importance this practice is resorted to, even by the Supreme Court of the United States, as was done in the present pending great case of Kansas v. Colorado [206 U. S. 46, 51 L. ed. 956, 27 Sup. Ct. Rep. 655], involving the right of a junior up-stream state to appropriate all the water in the stream. The court refused to pass on the demurrer or traversed pleas after most elaborate argument, and called for the entire proofs in the premises, so as to enable it to give the issues proper consideration. We think the issues here warrant a similar practice; and, while reserving all questions of jurisdiction until the further order of the court, the overruling order will be entered.